E. S. CUSENBARY v. R. LATIMER.

Decided February 22, 1902.

**1.—Specific Performance—Sale of Land—Contract.**

Where a contract consisted of a letter by a land agent to defendant saying that he could sell·defendant's land for a stated price and a letter from defendant in reply saying he would sell for the price stated, and for the agent to make out the deed and send it for execution, and the agent made out a deed to plaintiff who had offered for the land the price mentioned, and defendant refused to sign the deed, there was not such a contract of sale as plaintiff could enforce by specific performance, since he was not named or referred to therein.

Appeal from Young. Tried below before Hon. A. H. Carrigan.

*John C. Kay* and *R. F. Arnold,* for appellant.

*C. W. Johnson* and *Greene & Stewart,* for appellee.

CONNER, CHIEF JUSTICE.—This appeal is presented upon the trial court's conclusions without a statement of facts. Appellant was the plaintiff in the action, and he alleges in his petition that "in the month of April, 1901, plaintiff entered into a contract in writing with the defendant, whereby plaintiff agreed with defendant to .purchase and the defendant agreed to sell the land" described in the petition for the sum of $400, and he prayed for specific performance of the contract.

Save some letters not deemed material, the alleged contract is based upon the following correspondence between M. K. Graham, a land agent, residing in Graham, Young County, and appellee who resided in Tennessee:

"GRAHAM, Texas, April 5, 1901.
"Mr. R. Latimer, Tiptonville, Tenn.:

"Dear Sir.—I think I wrote you once before that I did not want to foreclose the deed of trust, and I will now say so again, but will not promise to say so any more. Can't you pay the thing up? How much do you want for a deed to the land, in addition to the note? Yours truly,

"M. K. GRAHAM."

This letter was followed in a few days by the following letter:

"GRAHAM, Texas, April 12, 1901.
"Mr. R. Latimer, Tiptonville, Tenn.:

"Dear Sir.—I can sell your land for four hundred dollars, and by extending the note I hold for two years, make your part cash to you. Do you want to make this sale, allowing me 5 per cent commission on the trade? Please answer promptly. Yours truly,

"M. K. GRAHAM."

These two letters were answered by appellee as follows:

"Tiptonville, Tenn., April 18, 1901.
"Mr. M. K. Graham, Graham, Texas:
    "Dear Sir.—Received your letter, stating that you could get four hundred dollars for the land, but that don't pay me what the land cost me. But as I haven't paid you the money on the note, you may take it. Make out the deed and send me, and I will sign it.    Yours truly,
                                        "R. Latimer."

It was also shown that appellee became the owner of the land in question by purchase and conveyance from A. R. McDonald, appellee assuming the payment of a note for $200, secured by trust deed on the land, given by McDonald to his vendor, and that prior to the correspondence set out M. K. Graham became the owner of the note and mortgage. The deed from McDonald to appellee and said trust deed fully described the land as it was described in appellant's petition, but the note contained no reference thereto nor to the trust deed by which it was secured. The court also found that appellee owned no other land that he could have authorized Graham to sell, and owned no other land in Young County, Texas, except some lots in the town of Graham, the sizes of which do not appear. At a date not specifically shown in the record, but which we presume was shortly prior to Graham's letter of April 12, 1901, appellant, through Graham as agent, made an offer (in amount not shown) for the land in controversy, and upon receipt of appellee's letter of April 18, 1901, Graham prepared deed from appellee to appellant properly describing the land involved and sent same to appellee for execution, which, however, appellee declined to execute, and hence this suit.

The trial court held, in substance, that the writings above set forth failed to sufficiently describe or identify the land therein mentioned, and accordingly gave judgment in appellees' favor.

We think the judgment must be affirmed. No rule seems better settled than that before a court of equity will decree the specific performance of a contract for the sale of land, the written agreement required by the statute must contain the essential terms of a contract expressed with such certainty that it may be understood without recourse to parol evidence to show the intention of the parties; and that no part of such contract is more essential than that which identifies the subject matter of the agreement. Jones v. Carver, 59 Texas, 295; Patton v. Rucker, 29 Texas, 402; Mitchell v. Ireland, 54 Texas, 301; Mathews v. Jarrett, 20 W. Va., 415; Hollenbeck v. Prior (Sup. Ct. Dak.), 40 N. W. Rep., 349; Strange v. Railway, 93 Fed. Rep., 72; 2 Dev. on Deeds, sec. 1010.

It is true that if the writing contain a description that can be made certain by an application thereof to the external circumstances and condition of the parties and subject matter, parol evidence will be received in thus establishing the identity of the matter described. 2 Bing. on Sale of Real Prop., 409, et seq.; Watson v. Baker, 71 Texas, 739;

League v. Scott, 61 S. W. Rep., 521. We think it may well be doubted, however, whether the letters relied upon as constituting the written contract have such certain description, if any, of the land therein mentioned, even with the aid of the external facts shown, as requires us to reverse the findings of the trial court to the contrary. Upon this point, however, we are not entirely agreed; but we all agree that the writings fail to constitute such contract on appellee's part with the appellant, E. S. Cusenbary, as can be specifically enforced in behalf of the latter.

In Fry on Specific Performance of Contracts, third edition, section 330, it is said: "The contracting parties must appear in the contract or the memorandum of it, in order to constitute a binding contract; but they may so appear either by name or by description, or by reference sufficient to ascertain their identity. Where the defendant made a written offer to take a lease, beginning 'Sir,' but without address, and the plaintiff's agent wrote an acceptance, but there was no document signed by the defendant showing the intended lessee's name, it was held that there was no written contract."

The writings here relied upon by no means comply with this rule. There is therein no reference, direct or otherwise, to appellant. Appellee's letters to Graham constitute mere written authority by virtue whereof Graham might in appellee's behalf have made with appellant a binding contract to sell the land which he now seeks to recover, but the record fails to show that this was done.

If we are correct in these conclusions, it follows that all assignments of error must be overruled and the judgment affirmed.

*Affirmed.*

Writ of error refused.