# WILLIAM LANAHAN *vs.* CARRIE S. COCKEY ET AL.

*Specific Performance—Indefinite Agreement.*

Upon a bill for the specific performonce of an agreement alleged to have been made by a decedent for the lease of certain premises for a number of years, the evidence examined and held to be too vague and uncertain to authorize the decree asked for.

*Decided November 12th, 1908.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, WORTHINGTON and HENRY, JJ.

*Frank Gosnell* and *Osborne I. Yellott*, for the appellant.

*Randolph Barton* and *Randolph Barton, Jr.*, (with whom was *D. G. McIntosh* on the brief), for the appellees.

WORTHINGTON, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appellant in the Circuit Court for Baltimore County, on the 22nd day of April, 1907, for the purpose of enforcing the specific execution of an alleged contract for the lease of certain lands located on Charles street avenue, in that county.

The material averments of the bill are, in effect, that the appellant, being in possession of said lands as tenant, in or about the year 1899, entered into a lawful and binding agreement with the owner thereof, Virginia M. Walters, whereby he was to remain and continue in possession of said lands until the year 1912, as her tenant, at and for the rental of $100 per year. The tenant to keep the fence around said lands in good repair. That in pursuance of said agreement the complainant had paid to the said Virginia M. Walters, at her instance and request, the rent of said lands in advance, to the year ending May 1st, 1912; that he had always kept the fence around said lands in repair, and was ready and willing and able to continue to do so until said 1st day of May.

The bill further alleges that said Virginia M. Walters, had died in the year 1905 intestate, and that the defendants are her sole heirs at law, to whom said lands had descended, subject to the right of the complainant to occupy the same until the 1st day of May, 1912, under and by virtue of said agreement.

The prayers are for a specific performance of the agreement, for an injunction to prevent the defendant from making a conveyance of the lands which would interfere with the right of the complainant to occupy and enjoy the same until said date, and for general relief.

The answer admitted that Mrs. Walters was formerly the owner of the lands in question, that complainant was in possession of said lands as tenant of Mrs. Walters; that Mrs. Walters had died on or about May 6th, 1905, seized of the

same, and also admitted the descent of the lands to the defendants as the sole heirs at law of the decedent, as alleged in the bill of complaint, but denied that any such an agreement as that set up in the bill of complaint whereby, as alleged, complainant was to remain in possession of said lands as tenant until May 1st, 1912, had ever been made or entered into. The principal issue therefore is as to the existence of the alleged agreement of lease.

Testimony to prove the existence of such an agreement was taken before an examiner in equity, and besides the evidence of certain living witnesses, a number of letters that passed between the complainant and Mrs. Walters, and certain vouchers for money received by her from the complainant, were introduced and admitted in evidence without objection; as was also certain other written evidence showing the terms upon which the complainant originally entered into possession of the property in question. These terms were, that he should pay $100 per year rental and keep the fences in good order; the owner of the land to pay the taxes.

This original contract of rental was made in the first place by the complainant in May, 1894; with Mr. Edwin Walters, then the owner of the property, who subsequently, in the year 1896, conveyed the same to Mrs. Virginia M. Walters.

From correspondence between the complainant and Mrs. Walters, it appears that for several years after she became the owner of the property, Mr. Lanahan, the complainant, as tenant, paid her regularly $100 per year in advance as rental for the use of the same: Then for a year or two he paid the taxes on the property, deducted the amount thereof from the annual rent, and remitted to her the remainder by check.

On July 15th, 1899, Mrs. Walters wrote from New York to the complainant, expressing her need for some money, and asking on what terms she could borrow from him.

He replied under date July 24th, 1899, as follows:
"Dear Madam:

I herewith enclose you check for $200 agreeable to your request, the same to be credited on the rent to become due in

the future, and such taxes as I may be required to pay for you as heretofore. Please sign the enclosed receipt and return to me.

                    Very respectfully yours etc."
                        (signed) Wm. Lanahan.

A receipt from Mrs. Walters of the same date, evidently the one mentioned in the letter as enclosed therewith, is as follows:

"No. 458 Twenty third St. New York, July 24th, 1899. $100. Received of William Lanahan, one hundred dollars ($100.) the same to be credited by him against any future rent of the premises occupied by him on Charles St. avenue, owned by me, and any taxes he may be required to pay on said property for my account. The said Lanahan is to occupy said premises as my tenant until said advance shall be fully paid."

                    (signed) Virgina M. Walters.

Subsequently on May 11th, 1900, Mrs. Walters wrote Mr. Lanahan from Atlantic City as follows:

"Dear Mr. Lanahan:

Will you send me the tax bill for last year (1899) that you paid for me on the land on Charles St. Ave.?

This year's taxes you will please pay and deduct the remainder from the year's rent toward the payment of the two hundred dollars I borrowed of you last July or August. Please fix all up straight and return to me here.

                    Respect."     (signed) Virgiuia M. Walters.

In reply to this Mr. Lanahan wrote Mrs. Walters under date of May 16th, 1900, enclosing check for $30.45 and receipted tax bill for 1899 amounting to $69.55, in payment of the rent of the property to May 1st, 1901, saying in his letter, "I have not deducted this from the $200 loaned you some time since, presuming that it would be more satisfactory to you to have me remit you the balance of the rent."

Mrs. Walters acknowledged the receipt of the check and receipted tax bill, and was quite profuse in her thanks, saying in her letter: "For your kindness to me in sending me the

check in spite of me owing you money is beyond mere words of thanks."

It further appears from the vouchers and correspondence filed in the case, that thereafter the complainant paid the annual taxes on the property and in addition regularly remitted in advance the whole yearly rental of $100 to Mrs. Walters, down to the time of her death on May 6th, 1905, the last payment for rent being for the year from May 1st, 1905, to May 1st, 1906.

At the time of Mrs. Walters' death, the complainant had paid for her in taxes the sum of $407.55; and $100 of the sum loaned her on July 24th, 1899, was still unpaid. If interest be added to the sum of these two items the total would be $610.55.

At the annual rental of $100 this total would pay the rent of the property in advance for a little more than six years from May 1st, 1906, that is, to something beyond May 1st, 1912, the date alleged in the bill of complaint as that to which the rent had been paid in advance.

Upon this state of facts the complainant seeks the aid of a Court of equity for the specific enforcement of the contract as set up in the bill of complaint.

The lower Court refused the relief prayed for and dismissed the complainant's bill. The complainant appeals.

"The principles regulating the exercise by Courts of equity of their power to compel the specific performance of contracts are well settled. Specific performance is not a matter of right in the litigant, but is one of sound judicial discretion controlled by established principles of equity, and it will be granted or withheld by the Court upon a consideration of all the circumstances of each particular case. The contract sought to be enforced must be certain and definite in all of its provisions, and fair and mutual in its terms, and must be so clearly proven as to satisfy the Court that it constitutes the actual agreement between the parties. If any of these ingredients are wanting, specific performance will not be decreed." *Horner* v. *Woodland*, 88 Md. 511.

. That the payments for several years of the whole rent by Mr. Lanahan, without any deduction for taxes paid by him, or on account of the loan to her, were not made in pursuance of any agreement between them to that effect, is quite manifest from the correspondence.

Besides the letter of May 11th, 1900, above set forth, she wrote Mr. Lanahan again on July 15th, 1901, acknowledging the receipt of a check from him for $100 in full of rent for one year in advance, and adding, "you may well imagine my pleasure and surprise at receiving the same."

It is quite patent therefore that Mr. Lanahan paid the whole annual rental without any deduction on account of the loan or for taxes paid by him, voluntarily, and purely from motives of liberality in dealing with Mrs. Walters who seems to have been constantly in need of money.

The question before us is not whether Mr. Lanahan, is entitled to recover the sums so overpaid by him, but whether he has proven such a contract of lease as a Court of equity can specifically enforce, We think not. "All agreements to be executed in equity must be certain and defined; equal and fair; and proved as the law requires. It is enough to doubt on any of these points to refuse relief." *Mundorff* vs. *Kilburn*, 4 Md. 464.

. All the written evidence in this case taken together does not make out a contract certain and definite in its terms, and the parol evidence adduced to supply the deficiency, was properly excluded by the lower Court, if for no other reason, either because it was mere hearsay or because this being a proceeding against heirs at law, no party to the cause is allowed of his own motion, under our statute, to testify as to any transaction had with, or statement made by the intestate, unless the testimony of such intestate has already been given in evidence concerning the same transaction or statement, in the same case.

As we have before indicated one important particular in which the alleged contract is uncertain and insufficient, is that no definite term of rental is shown to have been agreed on by the complainant and Mrs. Walters. The duration of the term

as set out in the bill of complaint was a mere deduction from the state of the account existing between them at the time of her death on May 6th, 1905.

At that time so much had been paid by the complainant for Mrs. Walters for taxes on the property, one hundred dollars were still due him of the sum borrowed by her of him in 1899. By adding interest to the total of these items, and dividing the whole amount thus obtained by the annual rental of $100, gives 6 as a quotient, and it is only by this process of deduction that the term of six years from May 1st, 1906, to May 1st, 1912, as set out in the bill of complaint, is ascertained.

We think the contract thus made out by the complainant too vague, too uncertain, too indefinite, too obscure, to enable a Court of equity to act upon it with safety or propriety. We do not deem it necessary to extend this opinion by considering the other objections urged against the sufficiency of the contract relied upon by complainant, but for the reasons already assigned we will affirm the decree of the lower Court, without prejudice, however, to the complainant to assert his rights, whatever they may be, in a Court of law.

In their brief as well as in the oral argument of the case in this Court, the attorneys for the appellees attach considerable importance to the discrepancy of $100, which will be observed between the sum mentioned in the correspondence as having been loaned or advanced to Mrs. Walters, on July 24th, 1899, and that named in the receipt of the same date. The amount loaned appearing to be $200 and the amount named in the receipt being $100 which is the amount of such loan still claimed to be due.

In the view that we have taken of the case it is not material to its proper determination whether this discrepancy was caused by a repayment or gift of part of the loan, or by an error in drawing the receipt. Certain insuperable objections to the contract have already been pointed out and these objections remain whether we consider the discrepancy mentioned, or not.

*Decree affirmed with costs to the appellee.*