**CANTRELL et al. v. GARRARD.**
(No. 316-3649.)

(Commission of Appeals of Texas, Section A. May 17, 1922.)

1. **Frauds, statute of ⟨key⟩109—Contract to sell oil lease must describe not only land but terms of lease, etc., with such certainty as to identify subject-matter without parol evidence.**

To render a contract for the sale of an oil and gas lease enforceable under Rev. St. arts. 1103, 3965, it must describe not only the land

covered by the lease, which is the subject-matter of the contract, but the term for which the lease was to run, the time for beginning drilling operations, the time and amount of payments in lieu thereof, and the amount to be paid for gas produced, with such certainty that the subject-matter may be identified without recourse to parol evidence.

2. **Frauds, statute of ⟨key⟩109—Description of oil lease in contract to sell held insufficient to identify it.**

A contract to sell an oil and gas lease "known as a commercial lease, providing for one-eighth royalty to the landowner," held insufficient, under Rev. St. arts. 1103, 3965, to identify the lease, though the land covered thereby was particularly described.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Action by B. E. Garrard against J. P. Cantrell and others. From a judgment of the Court of Civil Appeals reversing a judgment of the district court for defendants and rendering judgment for plaintiff (232 S. W. 911), defendants bring error. Reversed, and judgment of district court affirmed.

Kay, Akin & Kenley, of Wichita Falls, Miller & Miller, of Fort Worth, and Chas. L. Black, of Austin, for plaintiffs in error.

Carrigan, Montgomery, Britain & Morgan, of Wichita Falls, for defendant in error.

GALLAGHER, J. The Court of Civil Appeals has made a clear and concise statement of this case, and we adopt the same, as follows:

"On the 3d day of February, 1919, the plaintiff, B. E. Garrard, and the defendant J. P. Cantrell and his associates, made an agreement by the terms of which the said Garrard agreed to sell to the said Cantrell and associates 'an oil and gas lease' on 20 acres of land in Wichita county, Tex. The land to which the lease was to apply was particularly described and provision made for the examination of the title and payment of the consideration, $50,000, upon approval of the title. $10,000 was deposited in a bank at Wichita Falls, in escrow, to be paid as a part of the consideration. The contract provided that in case the said Cantrell and associates should make default in the performance of the contract the $10,000 should be paid to Garrard, as damages. The only description of the terms of the lease to be sold was contained in this language in the contract:

" 'A lease or an assignment of a lease is hereby proposed to be sold, what is known as a commercial lease, providing for one-eighth royalty to the landowner.'

"Garrard brought this suit against the defendants Cantrell and others and the bank, to recover the $10,000 deposited in the bank, alleging that he had performed his part of the contract, and the defendants had refused to accept the assignment of the lease tendered in pursuance to the terms of the contract. The defendants answered that the contract was void for uncertainty, in that the lease which

the plaintiffs agreed in said contract to sell to the defendant was not sufficiently described in the contract to identify it. A trial before the court resulted in judgment for the defendants.

"It was shown on the trial that one Young was, at the time of the execution of the contract between the plaintiff and defendant, the owner of an oil and gas lease on said 20 acres of land. This lease was dated September 28, 1918, and extended for a term of three years from said date, 'and as long thereafter as oil or gas, or either of them, is produced from said land.' By its terms the lessee agreed, first, to deliver to the lessor one-eighth of all oil produced and saved from the premises; second, to pay to the lessor $300 per year royalty on each gas well; third, to pay royalty of $50 per annum where gas should be produced from any oil well for the manufacture of casing head gas.

"It was further agreed that, if no well should be commenced on the land before April 1, 1919, the lease should terminate unless the lessee should pay to the credit of the lessor at a bank in Marshall, Mo., the sum of $250; that such payment would preserve the contract against lapse on account of the failure to commence a well for the period of three months; and, 'in like manner and upon like payments or tender, the commencement of a well may be further deferred for like periods of the same number of months successively.' The original lease covered a tract of 80 acres of land, but said lease contract provided that it might be assigned in whole or in part, and that in the event of partial assignment the holder of leases on portions of said land would be liable for payment of only proportional parts of rentals in order to prevent forfeiture.

"The plaintiff, within the time provided by his contract with defendants, delivered to defendants an abstract of title, which showed that the said Young had good title to said oil and gas lease to the said 20 acres of land, and also within the time provided by the contract tendered to the defendants a proper assignment of the said lease from the said Young to Garrard and from Garrard to the defendants. The said lease so owned by the said Young was on producer's form No. 88. It was shown that this form was in general use in the oil fields in the vicinity of Wichita Falls and was known as a 'commercial lease.' Other evidence was offered to the effect that by a commercial lease was meant any lease which might be assigned, and which provided for the payment of rentals in lieu of drilling operations. Producer's form No. 88 had a number of blanks in it which were required to be filled in to meet the particular contract as made between a lessor and lessee. These blanks were as to (1) the cash consideration; (2) description of the lands covered by the lease; (3) term of lease; (4) the amount of royalty to be paid each year on each gas well; (5) the amount of royalty to be paid for the gas used from any oil well for the manufacture of casing head gas; (6) the time for the beginning of drilling operations and amounts to be paid from time to time in lieu of drilling operations."

The Court of Civil Appeals reversed the judgment of the district court and rendered judgment for Garrard for the amount sued for by him. 232 S. W. 911. Cantrell and

his associates, joined by said bank, applied for a writ of error. The Supreme Court granted the writ and referred the case to this court for consideration and report.

[1] A contract for the sale or conveyance of the lease under consideration was required by our statutes to be in writing. R. S. arts. 1103 and 3965. The lease itself constituted the subject-matter of the contract. The land upon which the lease was given was one of the essential elements of description, but not by any means the only one. The term for which the lease was to run, the time for beginning drilling operations, the time and amount of payments in lieu of drilling operations, and the amount to be paid for gas produced, were also essential elements of description. It was shown by the evidence that these latter matters were determined by special agreement between the parties to each particular lease, and such agreement then incorporated therein. The so-called commercial leases varied in these important details, and there was no attempt to prove even substantial uniformity with respect to them.

The sufficiency of the description of the subject-matter in a contract of sale of land to render it enforceable under the provisions of the statute of frauds has been frequently passed upon by our Supreme Court.

In the case of Jones v. Carver, 59 Tex. 293, 295, the court held that a bond for title which described the land to be conveyed as "a piece of land supposed to be 40 acres" was insufficient to support an action. We quote from that case as follows:

"The rule is that a written agreement for the sale of land must contain the essential terms of a contract, expressed with such certainty that it may be understood without recourse to parol evidence to show the intention of the parties; and no part of such contract is more essential than that which identifies the subject-matter of the agreement.

"As was said by Coke, Justice, in the case of Patton v. Rucker, 29 Tex. 409: 'The statute of frauds requires contracts of this character to be in writing. The object of the statute would be defeated, and the very evil intended to be provided against introduced and stimulated, if so material an ingredient in the contract as a definition and description of its subject-matter were allowed to be proved by parol. It has, therefore, been long since well settled, that parol proof is inadmissible for that purpose.'"

The case of Rosen v. Phelps (Tex. Civ. App.) 160 S. W. 104 (writ refused), involved an attempt to enforce a written contract for the exchange of certain lands. The contract was signed by both parties. It provided in substance that Phelps, one of the parties thereto, should convey to Rosen, the other party thereto, 3,000 acres of land in Bosque county, and that in consideration thereof Rosen should convey to Phelps certain enumerated lots in certain enumerated blocks of land. No other description was given. The plaintiff in that case sought to aid the de-

scription by allegation and proof that the lots and blocks enumerated in the contract were situated in a certain addition to the city of North Fort Worth, and that prior to the execution of said contract both parties went upon the ground and checked the said lots and blocks by the plat of said addition, and that the 3,000 acres in Bosque county was situated near the town of Morgan; that said lands had been inspected by Rosen; that Phelps had delivered to him a printed circular giving a particular and detailed description of said lands; and that the same were the only lands owned by Phelps in said county. It was held in that case that the written contract could not be so aided and interpreted by parol and that it was unenforceable for lack of sufficient description of the subject matter.

[2] It seems to be conceded in this case by defendant in error that it was not permissible to identify the subject-matter of said contract by parol evidence. There is neither allegation nor proof that the existence or terms of the lease tendered were known to plaintiffs in error at or prior to the time they executed such contract.

The description of said lease, the subject-matter of the contract sued on, was insufficient to identify the same, and therefore insufficient to meet the requirements of the statutes cited, and defendant in error was not entitled to recover for the breach of such contract. Jones v. Carver, supra; Rosen v. Phelps, supra; Penn v. Texas Yellow Pine Lumber Co., 35 Tex. Civ. App. 181, 79 S. W. 842 (writ refused); Cusenbary v. Latimer, 28 Tex. Civ. App. 217, 67 S. W. 187 (writ refused); Johnson v. Granger, 51 Tex. 42; Zanderson v. Sullivan, 91 Tex. 499, 503, 44 S. W. 484; Baurman v. Binzen (Sup.) 16 N. Y. Supp. 342; Lanahan v. Cockey, 108 Md. 620, 71 Atl. 314.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that the judgment of the district court be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted and will be entered as the judgment of the Supreme Court.