CARROLL PATTISON *v.* HOWARD P. BRYDON et al.

*Specific Performance—Existing Remedy at Law—Evidence as to Contract.*

In view of Code, art. 16, sec. 246, the existence of an adequate remedy at law is no defense to a suit for specific performance, in the absence of a bond to secure the payment of any judgment that might be recovered, or a showing by defendant of property from which damages can be made.    p. 582

While specific performance is not a matter of right but is in the sound discretion of the court, it will in general be decreed where the contract is in writing, is certain and fair in all its parts, is for an adequate consideration, and is capable of being performed.                          p. 583

The witnesses, heard by the chancellor on an issue as to the existence of a contract sought to be specifically enforced, being evenly balanced in number, and their testimony being contradictory and irreconcilable, *held* that his decree refusing the relief asked should be affirmed.          .          p. 584

*Decided April 21st, 1926.*

Appeal from the Circuit Court for Allegany County, In Equity (Doub, J.).

Bill by Carroll Pattison against Howard P. Brydon and E. Richard Brydon. From a decree dismissing the bill without prejudice, plaintiff appeals. Affirmed.

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Walsh, JJ.

*Horace P. Whitworth* and *Walter C. Capper,* for the plaintiff.

*Taylor Morrison,* with whom were *Harry G. Fisher* and *A. Taylor Smith* on the brief, for the appellees.

ADKINS, J., delivered the opinion of the Court.

The bill of complaint in this case alleges that in the year 1915 the plaintiff and defendants organized a corporation known as "The Caledonia Coal Company," of which E. Richard Brydon was made president and Howard P. Brydon secretary and treasurer, and they together with the plaintiff owned all the stock in the proportion of one-third each; that a lease, expiring in 1922, was obtained by said company, of a tract of big vein coal situated near Barton, Allegany County, Maryland, and that under said lease the company operated and mined the coal until some time in the year 1923; that the lease, after its expiration in 1922, was renewed in the names of the defendants instead of the name of the said company, without the knowledge of the plaintiff; that until July, 1920, plaintiff handled and sold all the coal which was mined by said company, when the defendants, having established themselves in the coal brokerage business under the name of H. P. Brydon & Brother (an incorporated company owned by the defendants) arbitrarily refused to any longer permit plaintiff to receive the coal mined by the Caledonia Coal Company, but handled and shipped the coal themselves, and plaintiff, from that time until after December 27th, 1922, never received any statement of the affairs of the Caledonia Coal Company or any dividend or earnings therefrom, although business was active and there were large profits earned by the company; that during this period there became due and owing to said company by H. P. Brydon & Brother the sum of $315,777.29, and that during said time the Pekin Coal Company and the Coromandel Mining Company, each a corporation owned and controlled by defendants, likewise became indebted to the Caledonia Coal Company for large sums of money; that plaintiff, seeking for an accounting from defendants and a distribution of accumulated earnings, was informed by defendants that they were engaged in consolidating the several coal properties in which they were interested and desired the consent of the plaintiff that the coal mines and other tangible property of the Cale-

donia Coal Company be included in such consolidation, and, as a consideration for such consent, they agreed to account with him and distribute to him the entire volume of his stock in the Caledonia Coal Company upon his surrender and transfer of said stock to the defendants, and, thereupon, in order to thus secure the fair value of his holdings in said company, he entered into a contract in writing with the defendants dated December 27th, 1922, and set out in full in the bill of complaint, by which it was agreed that there should be conveyed to the Brydon Brothers Coal Corporation then being formed all of the coal in place, mines, mining rights and other tangible mining equipment and property owned by the Caledonia Coal Company and used in connection with the operation of its coal mines, but not including its cash, accounts receivable, books and records, for 380 shares of the preferred stock and 380 shares of the common stock of the Brydon Brothers Coal Corporation, "which stock shall be issued in the amount of one-third thereof to Carroll Pattison, one-third thereof to E. Richard Brydon and one-third thereof to Howard P. Brydon"; that the said Pattison should forthwith furnish to the officers of the Caledonia Coal Company a copy of the audit or account taken from his books, showing all commissions or profits retained by him from the sale of the coal of said company, the same being the difference in price between the amount received for said coal from the purchasers and the amount paid by him for said coal to the company, and at the same time he should be entitled to receive from the officers of said company any and all of the audits of said company made subsequent to this audit then in his possession; that the Brydons should purchase and pay for all the stock of the Brydon Brothers Coal Corporation to be issued to Pattison in exchange for property of the Caledonia Coal Company as elsewhere provided in the agreement; and purchase and pay for all of the stock of the Caledonia Coal Company now owned by the said Pattison, paying therefor one-third of the present fair market value of the

property of the Caledonia Coal Company so sold and transferred to the Brydon Brothers Coal Company, plus one-third of the value of the remaining assets of the Caledonia Coal Company after the deduction of its liabilities; that, in case the parties could not agree upon the value to be paid for said stock, then its value should be determined by arbitration, all parties agreeing to be bound thereby; that one arbitrator should be appointed by Pattison and one by the Brydons, the two thus appointed to select a third, all of whom should be disinterested parties; that the arbitrators should have full power in ascertaining the fair market value of said stock, and to pass upon and settle any disputed matter between the parties or in connection with their mutual accounts with the Caledonia Coal Company, and in general to pass upon and determine all matters bearing upon the value of the assets of said Caledonia Coal Company or the value of the assets sold by it to the Brydon Brothers Coal Corporation, each of the parties agreeing to place in the hands of the arbitrators such of their respective books, papers, correspondence, accounts, vouchers, etc., as said arbitrators may desire or require in ascertaining the correct status of the finances of said Caledonia Coal Company; that Pattison should give to the Brydons, their auditor or auditors, complete access to all his books, correspondence and such like, in order that they may satisfy themselves of the correctness of the statement furnished by said Pattison with reference to the sales of coal made by him and shipped by the Caledonia Coal Company, and that the Brydons should forthwith give to Pattison, his auditor or auditors, complete access to all the books, correspondence and such like of the Caledonia Coal Company or other companies or individuals with whom it transacted business, provided same are in their possession or under their control, in order to ascertain the correctness of the books and audits of said company; that said Brydons immediately upon the execution of the agreement should place in the possession and control of said Pattison all of their stockholdings in the Caledonia Coal Company, being

two-thirds, and as soon as issued, all of the stock or other things of value given by the Brydon Brothers Coal Corporation for the property of the Caledonia Coal Company, the same to be held by the said Pattison as security for the performance by the said Brydons of their contract, said stock so held, upon the consummation of the agreement, to be immediately returned to the Brydons, otherwise to be and remain subject to be realized upon as security for such performance, in conformity with the law pertaining to collateral securities; that all costs of audit and appraisement shall be consolidated as an item of liability and deducted from the value of the assets of the Caledonia Coal Company before the finding of the value of one-third thereof; that the audit or audits which either of the parties may desire to make as herebefore provided, should be made and completed within ninety days from the date of the contract; that the arbitrators should be named within ten days thereafter, and make their findings within forty-five days after their appointment. There was further provision for the time and manner of selecting the third.

The bill alleges that plaintiff carried out and complied with the provisions of the contract on his part to be performed in connection with the transferring of said assets of the Caledonia Coal Company to the said Brydon Brothers Coal Corporation; and that the collateral securities were delivered to him; that he furnished to the officers of the Caledonia Coal Company a copy of the audit taken from his books showing all commissions or profits retained by him from the sale of coal of said company, the same being the difference in price between the amount received for said coal from the purchasers and the amount paid by him for said coal to the company; that he gave access to all his books, correspondence, etc., to the defendants and to their auditors; that in order to ascertain the value of one-third of the net assets of the Caledonia Coal Company, this being the purchase price to be paid by defendants to plaintiff, audits were made up of the affairs of said company and of the books

and accounts of the plaintiff so far as the same pertained to his handling of the coal of said company or in any way reflected upon the state of his account with said company, and thereupon, after many conferences and various attempts to check up and reconcile the reports and figures of the various audits made under said agreement, and for the purpose of arriving at the price to be paid by the defendants to the plaintiff for his interest in said Caledonia Company and his stock in said Brydon Brothers Coal Company, an agreement and understanding was arrived at whereby all of said differences in figures were reconciled and adjusted and the sum of $95,013.79 was agreed upon as the proper amount to be paid under the provisions of said contract by the defendants to the plaintiff; that by reason of said agreement upon all matters in dispute, arbitration was unnecessary and was waived by all the parties; that on July 17th, 1924, plaintiff made formal demand in writing upon the defendants for the payment to him of said sum of $95,013.79 and offered to turn over and transfer to defendants all his stock in said companies standing in his name and also all the stock held by him as collateral, and has at all times since the agreement as to the amount due him endeavored to have the agreement consummated and has been ready and willing to perform his part of said agreement, but the defendants have failed and refused to carry out their agreement of purchase; that the stock of the Caledonia Coal Company has now no market value because the lease of its coal mines has expired and has been renewed in the names of the defendants, who have transferred same to the Brydon Brothers Corporation, and the only assets of the Caledonia Coal Company are the value of the accounts receivable due by the H. P. Brydon & Brother amounting to $315,777.29, the account of The Pekin Coal Company for $13,628.35, and the account of the Coromandel Coal Company for $5,695.94; that the shares of stock in the Brydon Brothers Coal Corporation, so far as plaintiff is informed, have no market value and are practically worthless, because all of the assets of said company are covered

with a bond mortgage in excess of the value of the property, which mortgage has been placed since the making of the contract set out in the bill; that plaintiff has no adequate remedy at law for the enforcement of his rights under the said contract of December 27th, 1922.

The prayer of the bill is for the specific enforcement of said agreement of December 27th, 1922, and for a decree requiring defendants to pay to the plaintiff the purchase price to be paid, with interest, and to accept from plaintiff a conveyance and transfer of all the property and rights agreed to be transferred to them under said contract, and for general relief.

A demurrer was filed to the bill of complaint and overruled; whereupon an answer was filed. It avers that plaintiff, acting as agent for the Caledonia Coal Company, in the sale and marketing of its coal, collected and received large sums of money due and belonging to said company, and failed and refused to account for the same, but mixed, confused and mingled them with his private funds and used them in his own business; it admits that defendants signed and executed the agreement of December 27th, 1922; it avers that plaintiff paid nothing for an interest in said company and that the lease of the mine was not acquired by any effort or influence of his; that he secured from the earnings of the company about $60,000, in addition to the profits from the use of the company's money collected by him; that defendant did not furnish a true copy of the audit of his books and failed and refused to furnish full access to all of his books and a true accounting of all of the moneys handled by him belonging to the company, and concealed and withheld information concerning his dealings, and made a false and untrue statement after said agreement was signed in reference to the production by him of all books and accounts in which he deposited money during the period under investigation, and that defendants would not have signed said agreement or put up the collateral if they had known what they afterwards learned; it denies that an agreement and under-

standing was arrived at whereby all of the differences in figures between the plaintiff and defendants were accounted for and that the sum of $95,013.79 was agreed upon as the proper amount to be paid under the provisions of said contract by the defendants to the plaintiff for all of his stock or for any other purpose, or that any sum was agreed to be paid by them, or agreed by them to be due plaintiff; but on the contrary avers that, during the investigation of the accounts and books of the plaintiff, it developed that plaintiff had made false statements in reference to his account, and had concealed and refused to furnish the full information he had previously agreed to furnish, so that it was impossible for defendants to reach any agreement or adjustment of the difference in figures and the respective claims and contentions of the parties, and that no such agreement was in fact ever reached; it admits that a bond mortgage was issued by Brydon Brothers Coal Corporation, but that it was with the full knowledge and consent of the plaintiff; it avers that plaintiff is indebted unto the Caledonia Coal Company in a large sum of money greatly in excess of the sums he claims from defendants, and that defendants owe him nothing; it denies that plaintiff has shown a case for equitable relief.

Testimony was taken in open court and the chancellor dismissed the bill of complaint without prejudice. From that decree this appeal was taken.

There is no difficulty about any question of law raised in this case.

As the chancellor decided in overruling the demurrer to the bill, the mere fact that plaintiff had an adequate remedy at law was no ground for denying him a remedy in equity, in the absence of a bond to secure the payment of any judgment that might be recovered, or the showing by defendants to the court's satisfaction that they had property from which damages could be made. Code, art. 16, sec. 246; *Brehm v. Sperry,* 92 Md. 378; *Neal v. Parker,* 98 Md. 270; *Baltimore Process Company v. My-Coca Co.,* 114 Md. 444; *Legum v. Campbell,* 149 Md. 148.

And while specific performance of a contract in equity is not a matter of absolute right, but is in the sound discretion of the court, in general courts will decree a specific performance where the contract is in writing and is certain and fair in all its parts, is for an adequate consideration, and is capable of being performed. Indeed, in such cases, it is as much a matter of course for a court of equity to so decree as it is for a court of law to give damages for a breach. *Popplein v. Foley,* 61 Md. 381; 6 *Pomeroy's Equity Jurisprudence,* 757.

But the contract sought to be enforced must be certain or definite in all of its provisions, and fair and mutual in its terms, and must be so clearly proven as to satisfy the court that it constitutes the actual agreement between the parties. If any of these ingredients are wanting, specific performance will not be decreed. It is enough to doubt on any of these points to refuse relief. *Mundorff v. Kilbourn,* 4 Md. 464; *Horner v. Woodland,* 88 Md. 511; *Lanahan v. Cockey,* 108 Md. 620; 6 *Pomeroy's Equity Jurisprudence,* 764.

The only question important to decide in this case is whether, at a meeting on October 29th, 1923, at which were present the plaintiff and defendants, their respective attorneys and auditors, an oral agreement was reached in which all differences between the parties were reconciled, and it was found that defendants were indebted to the plaintiff in the sum of $95,013.79, or rather the principle of settlement agreed upon, and all items entering therein, so that the amount was merely a matter of mathematical calculation, from which the above figures resulted.

In the affirmative is the positive testimony of the plaintiff himself, his attorney and his auditor; in the negative is the equally positive testimony of the defendants, their attorney and their auditor.

It is difficult to reconcile the letter of Mr. Fisher, defendants' attorney, to their auditor, Mr. Healey, of March 1st, 1924, with the testimony of the witnesses for defendants that practically the only things definitely agreed upon at this

meeting were amounts to be allowed the parties for services
and the rate of interest to be paid on unpaid balances.   That
letter is as follows:

> "My dear Mr. Healey:
>
> "I wrote you on January 14th telling you I had en-
> closed a final report by Mr. Pattison's auditor in the
> matter between him and the Brydons.   I asked you
> to give your earliest decision on the correctness of
> this statement, but as yet I have not heard from you.
> I especially asked you to give me the amount that Mr.
> Pattison would be entitled to.   Mr. Whitworth, the at-
> torney for Mr. Pattison, is insisting upon the matter
> being closed and I must hear from you by return mail.
>
> > "Yours very truly,
> >
> > Harry G. Fisher."

There was no answer to this letter.   The auditor gives as
a reason for his failure to reply that he was very busy at
the time.

Nor are we able to discover in the testimony offered by
defendants any substantial support of their charge that plain-
tiff withheld evidence of a bank deposit made by him during
the period of his agency for the company, although they could
easily have produced the proof if it existed, especially as the
alleged account was in a bank friendly to defendants.   But
in view of the fact that the learned chancellor had the ad-
vantage of having the witnesses before him and that the wit-
nesses are so evenly balanced in number and their testimony
so contradictory and irreconcilable, we are unable to say that
he erred in refusing specific performance, inasmuch as he was
"left in doubt as to whether a final agreement was reached on
all the points in controversy, whether the minds of the parties
met on all the points in dispute."   We will, therefore, affirm
the decree without prejudice to the right of appellant to take
such proceedings in equity or at law as may be appropriate.

> *Decree affirmed without prejudice, with costs
> to appellee.*