## FAGG v. TEXAS CO. et al.
### No. 1612—6018.

Commission of Appeals of Texas, Section A.
Feb. 15, 1933.

Anderson, Orr & McCord, of Fort Worth, for plaintiff in error.

Wynne & Wynne, of Wills Point, and Vinson, Elkins, Sweeton & Weems, of Houston, for defendants in error.

HARVEY, Presiding Judge.

In this suit, the plaintiff in error, G. E. Fagg, seeks to enforce specific performance of a contract in writing entered into by and between the plaintiff in error, on the one hand, and the defendants in error J. A. Bracken and wife, on the other. In the plaintiff's petition it is alleged that, by virtue of the terms of the contract, Bracken and wife became bound to execute to Fagg, the plaintiff, an oil and gas lease investing the plaintiff with the right to bore wells for oil and gas on a certain tract of four and a fraction acres of land described in the plaintiff's petition, and the right to seven-eighths of the oil and gas discovered, so long as same is produced in paying quantities. The trial court sustained a general exception to the plaintiff's petition, and a judgment of dismissal was entered. The judgment of the trial court was affirmed by the Court of Civil Appeals [38 S.W.(2d) 818], and Fagg applied for the writ of error, which has been granted.

The written instrument alleged reads as follows:

"That this agreement made and entered into on this the 26th day of November, A. D. 1929, by and between J. A. Bracken and wife, Rhoda Bracken, of Tyler, Smith County, Texas, parties of the first part, and G. E. Fagg of Fort Worth, Tarrant County, Texas, party of the second part:

"Witnesseth:

"That the said parties of the first part have located a surplus amount of land in the J. Walling Survey in Van Zandt County, Texas, and out of a certain 86 acres of land which was deeded to the said J. A. Bracken by H. C. Gilbert by deed dated the 15th day of September, A. D. 1925, as recorded in Volume 169, page 136, Deed Records of Van Zandt County, Texas, reference to which deed is here made for all purposes, less a certain 46 acres of land sold to J. R. Shivers; and the said J. A. Bracken and wife, Rhoda Bracken, being desirous of selling seven-eighths (7/8) oil and gas lease on the amount of surplus acreage which they claim to be four acres more or less, and the said G. E. Fagg being desirous of purchasing the same, have entered into the following agreement, towit:

"The said parties of the first part agree to secure the services of the County Engineer of Van Zandt County, Texas, at the earliest convenient moment, and will have this land surveyed, and will establish corners at such certain points that will establish the surplus, if any.

"That the parties of the first part will deliver to the said party of the second part a certified plat setting out the findings of the County Engineer of Van Zandt County, Texas; and that in the event there are four or more acres of land, the said party of the second part agrees to place in the Peoples National Bank of Tyler, Smith County, Texas, the sum of thirty thousand dollars ($30,000.-00), or a guaranty thereof, satisfactory to the President of the said Peoples National Bank of Tyler, Texas, upon the delivery to the party of the second part by the said J. A. Bracken and wife Rhoda Bracken, of a certified plat establishing this amount of acreage.

"It is further agreed and understood by both parties hereto that an 88 form lease, properly describing the surplus tract of land above mentioned, is to be placed in escrow in the Peoples National Bank of Tyler, Smith County, Texas, along with a copy of the plat furnished by the County Engineer of Van Zandt County, Texas, together with the said thirty thousand dollars ($30,000.00) above mentioned or a guaranty thereof.

"It is further agreed and understood by all parties hereto that the said party of the second part shall be delivered an abstract of title supplemented to date, and that he is to have five days from the date of the receipt of the abstract for the examination of same by his attorney; and that if there are any objections to the title by his attorney, then and in that event, the said J. A. Bracken and wife, Rhoda Bracken, shall have the necessary time in which to cure such objections; but in the event the said J. A. Bracken and wife, Rhoda Bracken, fail or refuse to cure such objections, then the said party of the second part reserves the right to cure such objections himself, or to waive such objections, but the party of the second part shall have the necessary time to cure such objections as may be set out in writing by his attorney; and that the said J. A. Bracken and wife, Rhoda Bracken, only agree to deliver a good and merchantable limitation title; and that, when such title has been perfected by the said J. A.

Bracken and wife, Rhoda Bracken, then and in that event, The Peoples National Bank of Tyler, Texas, is hereby instructed to deliver over to the said J. A. Bracken and wife, Rhoda Bracken, the said thirty thousand dollars ($30,000.00), but the said The Peoples National Bank of Tyler, Texas, is further instructed to hold the above mentioned lease pending the spudding of a well on said tract of land to be more fully described in the above mentioned lease; but when the said well has been spudded and surface casing set, The Peoples National Bank of Tyler, Texas, is hereby instructed to deliver to the said G. E. Fagg or order the lease above mentioned.

"It is further agreed and understood by the said G. E. Fagg that he will drill said well to a depth of three thousand (3,000) feet, or the Jarman sand, which is known as the Woodbine sand, but if, in the opinion of the said G. E. Fagg, a producing sand sufficient to pay is found at a lesser depth, then and in that event, he agrees to test same, and if found to be a paying sand, reserves the right to set and develop at such point.

"The drilling of said well is to be commenced within ninety days from the time party of the second part obtains merchantable title to the leased premises, provided however, that the time elapsing between the date of the filing of party of the second part's application with the Railroad Commission of Texas, Oil & Gas Division, for a permit to drill said well, and the date of the granting of such permit shall be excluded in calculating the above mentioned period of time within which said well is to be started.

"It is further agreed and understood by all parties hereto that the party of the second part shall file such an application to drill immediately upon his acceptance of title to the above mentioned lands; and that due diligence shall be exercised to secure same. Failure to start and prosecute the drilling of said well as herein specified shall terminate this lease as to both parties, and the moneys previously paid to the lessors by the lessee shall be retained by the lessors as liquidated damages, unless such failure to start and prosecute the drilling of said well, in accordance with the terms and provisions of this contract, shall be due to acts of Providence beyond lessee's control."

With reference to the averments of the plaintiff's petition, it is sufficient to say that the same show a cause of action for specific performance as sought, if the foregoing written instrument meets the requirements of the statute of frauds. Moreover, we shall assume, for present purposes, that the written instrument furnishes sufficient means to identify the tract of land described in the petition.

■ In order for an action to be maintained on a contract for the conveyance of real estate, the contract, or some memorandum thereof, is required by the statute of frauds to be in writing. R. S. art. 3995. It is settled by the decisions that such a writing does not meet the requirements of the statute, if the subject-matter of the agreement is not described sufficiently to identify same. Oil and gas in place under land are regarded in law as real estate, and a contract for the conveyance of rights therein falls within the purview of the statute. So then, even with the fact conceded that the written instrument set out above sufficiently describes the tract of land, the question of the sufficiency of the instrument to satisfy the requirements of the statute remains to be decided. For it appears from the instrument that the subject-matter of the agreement was the transfer of rights to oil and gas in place under the tract of land, and not the transfer of the tract of land itself. The tract of land to be affected by the proposed lease was an essential element of description, but not the only one. The character, extent, and duration of the rights to oil and gas in place, which the proposed lessee was to acquire, constituted an essential part of the subject-matter of the agreement, and called for means of identification. Cantrell v. Garrard (Tex. Com. App.) 240 S. W. 533; Anders v. Johnson (Tex. Com. App.) 276 S. W. 678.

■ The terms of the written agreement plainly disclose that an outright sale or unqualified conveyance of a seven-eighths interest in the oil and gas in place was not under contemplation of the parties; but the making of a lease which was to invest the proposed lessee with some character of rights in those minerals was contemplated. The particular character of the rights which were to be acquired by the proposed lessee, or the extent or duration of such rights, is not in any wise disclosed or made ascertainable. The provision relative to "an 88 form lease" can shed no light on those matters, for the reason that the character of printed matter contained in any designated class of oil and gas lease forms depends on what matter various designers of such forms may deem appropriate—and may vary accordingly. As we see it, the reference to "an 88 form lease" is as incapable of definite application as if the term "oil and gas lease form" had been used instead.

We recommend that the judgment of the trial court, and that of the Court of Civil Appeals affirming same, be affirmed.

CURETON, Chief Justice.

Judgments of the district court and the Court of Civil Appeals are affirmed, as recommended by the Commission of Appeals.