EUGENE TABER V. PETTUS OIL & REFINING COMPANY.

No. 7909. Decided June 3, 1942.
Rehearing overruled July 1, 1942.
(162 S. W., 2d Series, 659.)

*Taylor, Irwin & Irwin, Ivan Irwin* and *Lloyd Davidson, Jr.*, of Dallas, for plaintiff in error.

*Margaret A. Brand* and *Guthrie & Guthrie*, all of Dallas ,for defendant in error.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit by respondent, Pettus Oil & Refining Company, against petitioner, Eugene Taber, for the sum of $1,350.00 balance due under an alleged written contract executed by Taber with Ranco Oil Corporation, respondent's assignor. The instrument is as follows:

"December 11th, 1937.

Ranco Oil Corporation,
1201 Gulf States Building,
Dallas, Texas.

Gentlemen:

This will confirm our verbal agreement under the terms of which I agree to buy and you agree to sell me, One Hundred and Sixty (160) acres of Oil and Gas leases, covering the following described tracts, situated in Live Oak County, Texas, to-wit:

West Quarter (W1/4) of the most southerly quarter of Section No. 3, J. Poitevent Survey, Live Oak County, Texas, being a part of the Cook Ranch, designated on the 'Plat Map' as Tract No. 1, and containing 40 acres, more or less.

Southwest Quarter (SW1/4) of the northeast 160 acre squared tract, Section No. 52, J. I. Clare Survey, Live Oak County, Texas, being a part of the Cook Ranch, designated on the 'Plat Map' as Tract No. 2, and containing 40 acres more or less.

West Quarter (W1/4) of the most westerly squared 160 acre tract, Section No. 353, C. C. S. D. & R. G. N. G. Rr. Co. Survey, Live Oak County, Texas, being a part of the Cook Ranch, designated on the 'Plat Map' as Tract No. 3, and containing 40 acres, more or less.

North Quarter (N1/4) of the most westerly quarter, Section No. 1, J. Poitevent Survey, Live Oak County, Texas, being a part of the Cook Ranch, designated on the 'Plat Map' as Tract No. 4, and containing 40 acres, more or less.

I agree to pay, as consideration for these leases, the sum of One Thousand Six Hundred ($1,600.00) Dollars; payable on the following basis:

Two Hundred and Fifty ($250.00) Dollars cash.

The Balance of One Thousand Three Hundred and Fifty ($1,350.00) Dollars, to be paid you upon the completion of a test well to a depth of 5300 feet, or the Yegua Sand, unless oil and/or gas, in commercial quantities, is encountered at a lesser dept. In that event, the balance becomes due and payable.

It is understood and agreed that upon the completion of this test well, to the depth or depths above specified, or the Yegua Sand, you will furnish me with the following:

1. Photostat Copy of the Original Oil & Gas Lease.
2. Exact copy of a Schlumberger log, if any, of the well.
3. Copy of the Driller's log.
4. Paleontological determinations, if any are available.

It is also understood and agreed that the assignments are to be the regular Texas Standard Form No. 86, properly executed.

This clause is your authority to assign or reassign this Purchase Letter to whomsoever you may designate without further written consent from me.

Very truly yours,<br>
By: Eugene Taber<br>
Eugene Taber

ACCEPTED:

RANCO OIL CORPORATION:

By H. R. Randall
    Vice-President."

Trial was without a jury. The district court rendered judgment for Taber, which was reversed by the Court of Civil Appeals at Dallas, and rendered for respondent. 153 S. W. (2d) 700.

■ Taber interposed several defenses, among which was that the contract violates the Statute of Frauds (Art. 3995, subdiv. 4, R. S. 1925). We think the memorandum quoted is insufficient as a basis for respondent's suit, because of the provisions of that statute, and that the trial court's judgment was correct. So that proposition is all that we need discuss.

Cantrell v. Garrard (Com. App.), 240 S. W., 533, is decisive of this case. Garrard agreed to sell to Cantrell "an oil and gas lease" on 20 acres of land in Wichita County for fifty thousand dollars payable upon examination and approval of the title. Ten thousand dollars was deposited in a bank to be paid to Garrard as liquidated damages in the event of default by Cantrell. The land covered by the lease was adequately described, but the only description of the terms of the lease was a recitation that "a lease or an assignment of a lease is hereby proposed to be sold, what is known as a commercial lease, providing for one-eighth royalty to the landowner." At the time the contract was executed, one Young owned an oil and gas lease on the 20 acres referred to. Within the time specified, Garrard tendered Cantrell an abstract showing good title to the twenty-acre lease in Young and a proper assignment of the lease from Young to Garrard and from the latter to Cantrell. Cantrell declined to accept them. Garrard sued for the ten thousand dollars earnest money. Cantrell answered that the contract was void for uncertainty because the lease which Garrard agreed to sell him was not sufficiently described in the contract to identify it. Cantrell's contention was sustained, the court pointing out that since the term for which the lease was to run, the time for beginning drilling operations, the time and amount of payments in lieu of drilling operations, and the amount to be paid for gas produced—all essential elements of description—were not set out in the contract, the description of the lease was insufficient to identify the same and was, therefore, insufficient to meet the requirements of the Statute of Frauds, hence Garrard was not entitled to recover. This decision has been cited with approval in numerous cases, notably in Fagg v. Texas Co. (Com. App.), 57 S. W. (2d) 87; Laird v. Laird (Civ. App.), 52 S. W. (2d) 1113 (er. ref.); Sneed v. Lester

et al. (Civ. App.), 76 S. W. (2d) 802 (er. ref.) ; and Taubert v. Earle (Civ. App.), 133 S. W. (2d) 145 (er. ref.).

In Fagg v. Texas Co., supra, the writing bound one party to furnish an oil and gas lease on described lands, the same to be "an 88 form lease." The court said that neither the particular character of the rights which were to be acquired by the lessee nor their extent and duration was disclosed or made ascertainable; that the provision for an 88 form lease could shed no light on the question because "the character of printed matter contained in any class of oil and gas lease forms depends on what matters various designers of such forms may deem appropriate—and may vary accordingly"; that the reference to the 88 form is as incapable of definite application as the term "oil and gas lease form" used in Cantrell v. Garrard, supra.

The memorandum in this case calling for "one hundred and sixty acres of oil and gas leases" and assignments thereof to Taber "to be the regular Texas Standard Form No. 86, properly executed" certainly makes the essential elements of description referred to in Cantrell v. Garrard and Fagg v. Texas Company, supra, no more capable of definite application than was the language "oil and gas lease form" or "an 88 form lease" as used in those cases. Moreover, there was nothing referred to in the memorandum from which such essential descriptive elements could be ascertained. It is true that it required respondent's assignor to furnish a photostat copy of the oil and gas lease, but it is expressly said that this was not to be done until after the test well had been drilled; and when it was later actually tendered to Taber, he had already repudiated the contract. It follows, therefore, that neither the terms of the lease nor those of the assignment could have been ascertained at the time the memorandum was executed without resort to parol testimony. Hence, this case is ruled by the principle stated by Justice Sharp in Smith v. Sorelle, 126 Texas, 353, 87 S. W. (2d) 703, that "if the subjectmatter sought to be conveyed is not described sufficiently to identify same, the requirements of the statute have not been met" and that "the subject granted must be identified by the description given of it in the instrument itself" or by other writing referred to.

Therefore, we hold that since essential elements of the subject matter attempted to be dealt with in the memorandum signed by Taber could not be identified within the terms of the

instrument itself or any writing referred to by it as then in existence, respondent, as assignor of Ranco Oil Corporation, cannot recover thereon either for specific performance or for damages. Laird v. Laird, supra; Sneed v. Lester et al, supra.

■ This suit was filed on March 11, 1938. At the trial, on March 29, 1940, respondent offered the deposition of Taber taken March 8, 1940, and an agreed statement of facts signed by the opposing attorneys on March 14, 1940. Respondent says that if it may be conceded, for the sake of argument, that the memorandum is not sufficient to satisfy the requirements of the Statute of Frauds, the deposition and agreed statement of facts can be used to meet those requirements. We cannot approve this proposition. In determining whether the memorandum is sufficient in its descriptions to render the statute inoperative, we are confined to what it contained or referred to on December 11, 1937, and its deficiencies cannot be cured by reference to what may have been said with respect to essential descriptive matters more than two years after suit was filed thereon and more than two years after petitioner had repudiated it as insufficient to comply with the statute. This is squarely in line with the holding in Smith v. Sorelle, supra, that *since the deed* in question therein *referred to no data which could be used in aid of its description, the courts are confined exclusively to the description contained in the deed.* Moreover, the most that the deposition and agreed statement of facts show is that a test well had been drilled and that after Taber had repudiated the memorandum, respondent tendered a lease and assignment duly executed and the other instruments therein called for. At that time, this controversy had already arisen and the status of the respective parties under the memorandum had been fixed. In that situation, neither the deposition nor the agreed statement of facts could alter that status unless it contained a waiver of Taber's rights under the Statute of Frauds, and neither instrument reflects any such waiver.

The law looks with favor upon the filing of agreed statements of fact because they make for accuracy and tend to expediate trials, and the practice is to be encouraged rather than discouraged. That policy most certainly would not be served should we sustain respondent's proposition as to the effect to be given the agreed statement of facts in this case.

Respondent contends, further, that the statute is not applicable because the contract has been performed, in whole or in part, by both parties. The record shows that respondent drilled the test well referred to in the memorandum and then tendered Taber the instruments which it required to be furnished after the well had been drilled, along with an assignment on the regular 86 form. The record discloses, further, that Taber paid the $250.00 cash which the memorandum required him to pay, this suit being for the balance of $1,350.00 due on the agreed purchase price. These facts do not show such performance or part performance as to remove the bar of the Statute of Frauds.

■ Since the memorandum related to oil and gas in place, it was an agreement for a conveyance of real estate under Art. 3995 (4), supra, and is governed by the rules of law applicable to such agreements. Smith v. Sorelle, supra. It has long been held by this court that payment of the consideration, or a part of it, unaccompanied by possession of the land by the vendee and the making by him of valuable and permanent improvements thereon, does not render the contract enforceable. All the elements mentioned are indispensable. See Robertson v. Melton, 131 Texas, 325, 115 S. W. (2d) 624, 118 A. L. R. 1505, and authorities there cited; 18 Tex. Digest, Fraud, Statute of, key 129 (11). In this connection, it is sufficient to say that Taber was never in possession of the leasehold referred to in the memorandum, either actually or constructively, because he never did go into physical possession of the leasehold estate nor was any effort made to deliver him any assignment of a lease thereon until after he had repudiated the contract. Respondent's tender of the assignment under the circumstances stated was no more than a tender of performance. Robertson v. Melton, supra. Since Taber was never in possession, the contract cannot be enforced on the theory of performance. Hooks v. Bridgewater, 111 Texas, 122, 229 S. W., 1114, 15 A. L. R. 216.

We realize that the rule that performance will not take the case out of the statute, in the absence of possession and permanent and valuable improvements made by the vendee, is modified in some decisions to the extent that these elements are not indispensable when there are other facts which would make the transaction clearly a fraud on the plaintiff if not enforced. But we find no such facts in this case. Aside from a tender of the instruments referred to in the momorandum, the

only thing respondent did was to drill the test well. The tract of which the 160 acres in question was a part amounted to 4,962.75 acres, which the well was to test, so the loss to respondent resulting from its transaction with Taber is relatively small, less than 1/30 of its cost being chargeable proportionately to said 160 acres. And it should be remembered that respondent's assignor actually got $250.00 of Taber's money. Moreover, the statute cannot be disregarded for the prevention of mere wrongs or to remedy possible losses. Robertson v. Melton, supra. Respondent drilled the well charged with knowledge that the law would not enforce its alleged contract with Taber, hence it acted as its own peril and we cannot now do violence to the law to relieve it of the consequences. In other words, the facts of this case do not constitute such a fraud on respondent as to warrant our disregarding the broad public policy declared in our Statute of Frauds.

The judgment of the Court of Civil Appeals is reversed and that of the district court is affirmed.

Opinion adopted by the Supreme Court June 3, 1942.

Rehearing overruled July 1, 1942.