**OAKROCK EXPLORATION COMPANY, Appellant,**

v.

**David W. KILLAM, Killam Exploration Partners, Inc.; Robert J. Holley, Jr.; Amparo Linares; Blas Ramirez, Jr.; Annette M. Galloway; and J. Antonio Villalon, Appellees.**

No. 04–00–00828–CV.

Court of Appeals of Texas, San Antonio.

July 10, 2002.

Rehearing Overruled Sept. 6, 2002.

Joe H. Hernandez, Jr., Brownsville, Ruth G. Malinas, David L. Hanna, Ray A. Weed, Ball & Weed, P.C., San Antonio, for appellant.

Calhoun Bobbitt, Drought, Drought & Bobbitt, L.L.P., George H. Spencer, Jr., Clemens & Spencer, P.C., Kevin M. Warburton, The Gardner Law Firm, San Antonio, Daniel J. Brustkern, H. Lee Lewis, Jr., Strasburger & Price, L.L.P., Dan Miller, Thomas M. Weber, McElroy, Sullivan, Ryan & Miller, L.L.P., Austin, David W. Anderson, Waldron, Schneider & Todd, P.C., Houston, for appellees.

J. Antonio Villalon, pro se.

Robert J. Holley, Jr., pro se.

Sitting: PHIL HARDBERGER, Chief Justice, PAUL W. GREEN, Justice, SANDEE BRYAN MARION, Justice.

Opinion by: SANDEE BRYAN MARION, Justice.

In this appeal from a judgment notwithstanding the verdict, we consider whether the evidence is legally sufficient to support the jury's finding that letters signed by Oakrock Exploration Company and Annette Galloway, Amparo Linares, and Blas Ramirez, Jr. were contracts to enter into oil and gas leases. Because we hold that the evidence was legally insufficient to support a finding that a contract between the parties was formed, we affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Wilfred Baker is a petroleum engineer who owns a consulting firm that performs

reservoir analyses and assists other companies in planning, completing, and producing wells. In 1997, Baker became interested in obtaining an oil and gas lease on a 154–acre tract (the "Oscar Ramirez tract") in Zapata County. The seven mineral owners of the Oscar Ramirez tract fall into two groups: (1) the "Ramirez group" consisting of Oscar Ramirez, Jr., Norma Jean Ramirez Banks, Yolanda Ramirez Flores, and George Albert Ramirez; and (2) the "Martinez group" consisting of Annette Galloway, Amparo Linares, and Blas Ramirez, Jr.

Since 1983, the Oscar Ramirez tract had been subject to an oil and gas lease held by Mustang Oil & Gas Company, which was in bankruptcy. In January 1998, Baker and Roger Bowden (president and co-owner of Oakrock Exploration Company) agreed to acquire the Mustang lease from bankruptcy, and enter into agreements with the Ramirez group and Martinez group to execute new oil and gas leases on the tract. In late January 1998, Baker contacted Oscar Ramirez, Jr. to discuss various issues, including the pending Mustang bankruptcy, a proposed lease bonus and royalty percentage, and a geological study being conducted of the entire area. On March 7, 1998, Baker mailed identical letters to each member of the Ramirez and Martinez groups. The letters stated, in pertinent part, as follows:

Oakrock Exploration Company ("Oakrock") proposes to offer you, and all of the remaining members of your family who own mineral interest under the 154 acre Oscar Ramirez tract in southern Zapata County, a bonus of $300 per acre for a one-year Oil, Gas & Mineral Lease with a twenty [five] percent [25%][1] royalty on the acreage described and shown on the attached plat and lease description. (This lease is just south of the El Tigre Chiquito bridge approximately 20 miles south of Zapata, Texas.)

. . .

It is Oakrock's understanding that the operator of the existing well which is perpetuating the present Oil, Gas & Mineral Lease, Mustang Oil & Gas, has filed for Chapter 11 bankruptcy in Federal Bankruptcy Court. From the $300 per acre bonus, we will pay a non-refundable bonus consideration of $50.00 per acre until such time as a Release of the existing Oil, Gas & Mineral Lease is obtained from Mustang Oil & Gas. . . .

Oakrock will pay all legal expenses for Mr. George Person . . . to represent you and the rest of your family concerning the drafting of a new Oil, Gas & Mineral Lease to Oakrock, file all the proper motions, orders and a lawsuit, if necessary, to obtain Release of the existing Oil, Gas & Mineral Lease. . . . Additionally, Oakrock will pay for all legal expenses for a federal bankruptcy attorney, if necessary, to force this issue through Bankruptcy Court.

It is our recommendation that a[n] Oil, Gas & Mineral Lease will be drawn up by Mr. Person (the "Oakrock Lease") and submitted to you for your review and approval. . . .

. . .

Should the basic terms of this proposal be acceptable to you at this time, subject to your final review and acceptance of the terms and conditions of an acceptable Oil, Gas & Mineral Lease, then we would appreciate you signing and returning one (1) copy of this letter to my attention. . . .

Oakrock agreed, and the change was interlineated on the letters.

---

1. The March 7th letters originally offered only a twenty-three percent royalty, but when the Martinez Group asked for twenty-five percent,

If you would like to meet to discuss the existing lease, legal procedures necessary to force the Release of the existing Lease [from bankruptcy], and any terms of the Oakrock Lease, we will be happy to do so at your convenience....

The Ramirez group each signed and returned their copy of the March 7th letter.

On March 24, 1998, representatives of the Martinez group met with Baker and Bowden to discuss the terms of the lease, the lease bonus, and the bankruptcy issue. At the end of the meeting, each member of the Martinez group signed a copy of the March 7th letter. Oakrock paid the non-refundable fee of $50 to the mineral owners. Oakrock sent the signed letters to Person, who then drafted a lease and sent it to the mineral owners. On April 24, 1998, the Ramirez group signed the lease. The Martinez group did not sign the lease.

At about this same time, Robert Holley, a representative of Killam Exploration Partners ("KEP"), contacted the Martinez and Ramirez groups to propose a lease on the Oscar Ramirez tract with KEP. Another KEP representative, Tony Villalon, also contacted the Martinez group between March and June 1998 to persuade them to sign leases with KEP. On May 5, 1998, Holley faxed a letter to Person and the mineral owners seeking a meeting to discuss a proposed lease with KEP, a copy of which Person sent to Baker. In May 1998, Oakrock still had not met with the Martinez group to sign the oil and gas leases. Nevertheless, Oakrock contacted David Killam, KEP's president, and told him that Oakrock had binding letter agreements with the Martinez group. Also in May, letters were sent to KEP and Holley alleg-

ing that Holley was interfering with the letter agreements. Villalon again contacted the Martinez group, offering them a $500 per acre bonus, telling them they had more acreage than they thought they had, and that the letter agreements were not binding. After KEP agreed to indemnify them with respect to any legal action brought by Oakrock, the Martinez group signed leases with KEP on June 23, 1998.

Oakrock Exploration Company sued KEP, the Martinez Group, David Killam, Holley, and Villalon on a number of causes of action, including breach of contract and tortious interference with the March 7th agreements to enter into oil and gas leases. Holley failed to answer, and the court rendered default judgment against him, awarding Oakrock $2 million in damages on Oakrock's defamation claim. Villalon filed a *pro se* general denial, but, after he refused to answer discovery, failed to appear at hearings, and disobeyed court orders, the court struck his pleadings and rendered judgment against him with respect to liability on all of Oakrock's claims. Villalon did not appeal, and instead, filed for bankruptcy. Trial against the remaining defendants commenced.

After a seven-day trial, the court submitted to the jury Oakrock's breach of contract claim against the Martinez group and tortious interference claim against KEP.[2] The jury found that (1) the March 7, 1998 letters were contracts; (2) the Martinez group breached those contracts; (3) KEP willfully and intentionally interfered with the contracts;[3] and (4) Oakrock's lost profits amounted to $1.2 million. The jury refused to find that KEP's interference was justified by a good faith belief

---

**2.** The trial court granted a directed verdict in KEP's favor on Oakrock's claims for defamation, business disparagement, and civil conspiracy. Oakrock does not appeal this verdict.

**3.** The jury was not asked to determine whether KEP tortiously interfered with a prospective contract or business opportunity.

that it had a right to interfere. The trial court granted a directed verdict in David Killam's favor on all of Oakrock's claims.

KEP and the Martinez group filed motions for judgment notwithstanding the verdict, asserting there was no evidence to support the jury's findings that the letters were contracts or that Oakrock's lost profits amounted to $1.2 million. KEP's motion also asserted there was no evidence that it had tortiously interfered with the contracts and, alternatively, that it had conclusively established a "good faith" defense to that claim. The Martinez group's motion also asserted that the contracts were not enforceable under the statute of frauds and there was no evidence to support the finding of breach of contract.

The trial court rendered a judgment notwithstanding the verdict in favor of KEP and the Martinez group on the grounds that Oakrock's breach of contract claim against the Martinez group was barred, as a matter of law, by the statute of frauds, and that there was no evidence to sustain the jury's finding on Oakrock's lost profits. The court ordered a take-nothing judgment in favor of Killam,[4] KEP, and the Martinez group. Pursuant to the default judgments previously entered against Holley and Villalon, the court rendered judgment against Holley for $2 million (on Oakrock's defamation claim) and against Villalon for $100,000. This appeal ensued.

## STANDARD OF REVIEW

■■ A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict only when there is no evidence upon which the jury could have made its findings. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). To determine whether the

trial court erred in granting a motion for judgment notwithstanding the verdict, the appellate court must consider only the evidence and the reasonable inferences that support the jury's answers. *Id.* at 227–28. The judgment notwithstanding the verdict should be reversed when there is more than a scintilla of competent evidence to support the jury's finding. *Id.* at 228.

One of the grounds on which KEP and the Martinez group moved for a judgment notwithstanding the verdict was that there was no evidence to support the jury's finding that the March 7th letters were contracts between Oakrock and the members of the Martinez group, and by cross-issue, they assert the judgment should have been granted on this basis. Because whether the March 7th letters were contracts is dispositive of the appeal, we address this cross-issue first. *See Taco Cabana, Inc. v. Exxon Corp.*, 5 S.W.3d 773, 777 (Tex. App.—San Antonio 1999, pet. denied).

## EXISTENCE OF A CONTRACT

■■ The March 7th letters evidence a mutual understanding between Oakrock and the Martinez group. However, for that understanding to be a binding contract, it must contain the requisites for contractual formation: an offer, an acceptance in strict compliance with the terms of the offer, a meeting of the minds, each party's consent to the terms, and execution and delivery of the contract with the intent that it be mutual and binding. *Copeland v. Alsobrook*, 3 S.W.3d 598, 604 (Tex. App.—San Antonio 1999, pet. denied).

KEP asserts that because the March 7th letters lacked terms essential to oil and gas leases, the letters were nothing more than "agreements to agree." Oakrock asserts that the letters constituted contracts because terms such as a lease commence-

4. Oakrock does not appeal the judgment in favor of Killam.

ment date, delay rental provision, drilling commencement date, and other provisions often found in oil and gas leases can be implied by law. Oakrock contends a lease commencement date is not an essential term because an undated conveyance takes effect on execution and delivery; a drilling commencement date and delay rental provision are no longer essential terms because the law implies a covenant to use reasonable diligence in drilling and developing the lease when such terms are absent; and a delay rental provision was not essential here because the lease expired at the end of one year if there was no production. Thus, Oakrock argues that the March 7th letters are valid contracts, enforceable against the Martinez group and subject to tortious interference by KEP.

■ Whether an agreement is legally enforceable or binding is a question of law. *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 622 (Tex.App.—San Antonio 1996, writ denied). To be enforceable, the parties must have agreed on the essential terms. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992). However, parties may agree upon some contractual terms, understanding them to be an agreement, and leave other contract terms to be made later. *Id.; Komet v. Graves*, 40 S.W.3d 596, 602 (Tex.App.—San Antonio 2001, no pet.); *Hardin Constr. Group, Inc. v. Strictly Painting, Inc.*, 945 S.W.2d 308, 313 (Tex. App.—San Antonio 1997, orig. proceeding); *Texas Oil Co. v. Tenneco Inc.*, 917 S.W.2d 826, 830 (Tex.App.—Houston [14th Dist.] 1994), *rev'd on other grounds sub nom. Morgan Stanley & Co., Inc. v. Texas Oil Co.*, 958 S.W.2d 178 (Tex.1997). It is only when an essential term is left open for future negotiation that there is nothing more than an unenforceable agreement to agree. *T.O. Stanley Boot*, 847 S.W.2d at 221; *Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 555 (Tex.1972); *Texas Oil Co.*, 917 S.W.2d at 830; *Komet*, 40 S.W.3d at

602. Such an agreement is void as a contract. *Texas Oil Co.*, 917 S.W.2d at 830. The rules regarding definiteness of essential terms in a contract are based on the concept that a party cannot accept an offer to form a contract unless the terms of that contract are reasonably certain. *Texas Oil Co.*, 917 S.W.2d at 830. In certain situations, a court may uphold an agreement by supplying missing terms. *Id.* To that end, Texas courts prefer to validate transactions rather than void them; but, courts may not create a contract where none exists and they generally may not interpolate or eliminate essential terms. *Id.*

■ Traditionally, matters relating to lease development and protection of a lessor's interest are not expressly included in the written lease. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 567 (Tex.1981). The broad implied covenants are: to develop the premises, protect the leasehold, and manage and administer the lease. *Id.* When a lease is silent as to the lessee's duty to drill offset wells to prevent drainage, develop the lease, pay delay rentals in lieu of drilling, or where the period of the delay rentals may be paid has expired, an implied covenant is presumed. *Magnolia Petroleum Co. v. Page*, 141 S.W.2d 691, 693 (Tex.Civ.App.—San Antonio 1940, writ ref'd). However, a valid contract must describe the subject matter of the agreement sufficiently to identify it. *Taber v. Pettus Oil & Refining Co.*, 162 S.W.2d 959, 961, 139 Tex. 395 (1942); *Fagg v. Texas Co.*, 57 S.W.2d 87, 89 (Tex.Comm.App. 1933).

The subject matter of the March 7th letters was an oil and gas lease; therefore, to sufficiently identify the proposed lease, the March 7th letters had to contain essential terms descriptive of the lease. *Cantrell v. Garrard*, 240 S.W. 533, 534 (Tex.Comm.App.1922, judgm't adopted); *Taber*, 162 S.W.2d at 961. The term of the

lease, the drilling commencement date, time and amount of payments in lieu of drilling operations, and amounts to be paid for produced gas are essential elements in describing an oil and gas lease. *See Cantrell,* 240 S.W. at 534; *see also Smith v. Sabine Royalty Corp.,* 556 S.W.2d 365, 370 (Tex.Civ.App.—Amarillo 1977, no writ) (terms of agreement not sufficiently definite because such common terms as pooling arrangements, offset well obligations, and warranties were not mentioned); *Laird v. Laird,* 52 S.W.2d 1113, 1113 (Tex. Civ.App.—Texarkana 1932, writ ref'd) (agreement must state commencement date and duration of lease). The character, extent, and duration of the rights to the oil and gas in place are also essential terms. *Fagg,* 57 S.W.2d at 89; *Cantrell,* 240 S.W. at 534. Because the March 7th letters lacked these essential terms, the letters did not sufficiently identify the subject matter of the agreement between the parties. Accordingly, the letters are not enforceable contracts as a matter of law. *See T.O. Stanley Boot,* 847 S.W.2d at 222; *Komet,* 40 S.W.3d at 602; America's *Favorite Chicken Co.,* 929 S.W.2d at 622.

## CONCLUSION

Because our resolution of whether the March 7th letters were contracts is dispositive of all other issues on appeal, we do not address Oakrock's remaining issues, or KEP and the Martinez group's remaining cross-issues. Following submission of this appeal, Oakrock filed a motion to dismiss that portion of its appeal relating to its claims against J. Antonio Villalon based upon an agreement reached between Oakrock and Villalon. We grant the motion and dismiss Oakrock's appeal with respect to Oakrock's claims against Villalon.

We affirm the trial court's judgment.