**Opinion issued April 1, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00099-CV

———————————

## LEO BORRELL, Appellant

## V.

## ROBERT SCOTT WILLIAMS AND LAW OFFICES OF SCOTT WILLIAMS, Appellees

---

On Appeal from the 190th District Court
Harris County, Texas
Trial Court Case No. 2011-15733

---

## MEMORANDUM OPINION

In this legal malpractice action, arising from legal representation in an underlying jury trial, the client challenges the trial court's summary judgment in favor of his former attorney. Because the client failed to adduce evidence to support a finding that his attorney's alleged trial malpractice caused the client

damages, we affirm the judgment. We deny the attorney's motion for sanctions for filing a frivolous appeal.

## Background

### A. The client's business activities

The underlying breach of contract suit was tried to a jury, and the case was appealed to the Fourteenth Court of Appeals. Our sister court's opinion sets forth critical events during the trial.

The client, Leo Borrell, is a psychiatrist who engages in health-care-related business activities. *Borrell v. Vital Weight Control, Inc.*, No. 14–07–00390–CV, 2009 WL 783342, at *1 (Tex. App.—Houston [14th Dist.] Mar. 26, 2009, no pet.) (mem. op.). In the 1990s, Borrell met Diane Crumley, the founder, owner, and president of Vital Weight Control, Inc., which does business as NeWeigh. *Id.* at *1. NeWeigh referred prospective bariatric weight loss surgery patients to a Houston hospital for compensation; the hospital relationship ended in 2000, leaving NeWeigh in need of a new hospital partnership.

In the fall of 2000, Borrell and one of his business partners, Irvin Gregory, entered into a written contract with NeWeigh (the "October Contract"). *Id.* In the contract, Borrell and Gregory promised to identify an acceptable hospital in which NeWeigh could operate a bariatric surgery program, and to secure a contract between NeWeigh and that hospital. *Id.* If Borrell and Gregory were successful in

2

their efforts, any agreement between NeWeigh and the prospective hospital was to provide that Borrell and Gregory be compensated $200 per bariatric patient. Also, if an acceptable hospital or its parent organization acquired NeWeigh, Borrell and Gregory would be entitled to a sales commission of six percent of the purchase price. *Id.* Borrell and Gregory also had a right of first refusal in the event that a third party made an offer to purchase all or part of NeWeigh. *Id.*

By its own terms, the October Contract expired in thirty days, with the right of first refusal terminating ninety days after the termination of any proposed contract that NeWeigh and an acceptable hospital agreed to during the term of the October Contract. *Id.* The October Contract does not contain any other promises to pay Borrell or Gregory. *Id.*

During the term of the October Contract, NeWeigh did not receive any offers for purchase of the company; nor did it enter into an agreement with any hospital to establish or operate a bariatric surgery program. *Id.* Borrell and Gregory had, however, arranged a meeting between NeWeigh and Dynacq International, Inc., the owner of Vista Community Medical Center, L.L.C., to discuss the possibility of NeWeigh running a bariatric surgery program for Vista. *Id.* Dynacq extended an offer proposing such a program by submitting a draft agreement to NeWeigh, which NeWeigh rejected. *Id.*

**B.    The underlying suit**

About six months later, in May 2001, Vista and NeWeigh reached an agreement, whereupon Borrell demanded that NeWeigh pay him a fee for his role in securing it.  *Id.*  NeWeigh refused.  Borrell sued NeWeigh for breach of contract, quantum meruit, and promissory estoppel.  *Id.*  Borrell hired Robert Williams, an attorney, to represent him.  Williams tried the case to a jury.

At trial, Borrell testified that he and NeWeigh had entered oral agreements, in addition to the October Contract, including:

1. Crumley orally agreed to extend the October Contract indefinitely.

2. NeWeigh, through Crumley, orally agreed that it would pay Borrell five percent of the gross revenue that NeWeigh received from running a bariatric surgery program for Vista, as compensation for Borrell's assistance in obtaining a contract between NeWeigh and Vista.  *Id.*

3. Borrell and NeWeigh orally agreed that, alternatively, NeWeigh would pay Borrell five percent of Dynacq's revenue from the program, after Dynacq paid such amounts to NeWeigh.  *Id.*

4. Borrell orally agreed with Dynacq that it would pay him five percent of Vista's revenue from bariatric patients, either directly or through Crumley.  *Id.*

5. Borrell orally agreed with Dynacq that it would pay him the greater of $300 or "five to six percent" of fees collected per bariatric patient, subject to possible add-ons.

Crumley consistently denied that she or NeWeigh had agreed to compensate Borrell other than as provided in the October Contract.  Although she disputed the

4

existence and the terms of any additional agreements between the parties, Crumley confirmed that the parties had agreed to extend the time for performance of the October Contract. *Id.* at *3.

At trial, Williams represented that Borrell would not proceed with a breach of contract claim, but would ask that the jury impose liability based on quantum meruit and promissory estoppel. During a hearing on pre-trial motions, he observed:

> [W]hat I see us going to trial on, what I see ultimately being submitted to the jury is quantum meruit and promissory estoppel issues. That's because we cannot prove our damages under the contract claim. And I think there's also sufficient evidence to suggest that maybe the contract was never finalized. There was a meeting on April 4th of 2001, which you'll hear a lot about, where there was still some terms that had not been nailed down. Plaintiff intends to proceed on quantum meruit and estoppel.

He made several similar statements during that hearing and later, repeating, "[T]hose [contract] damages simply cannot be proved," and, "We elected our remedy; that's quantum meruit."

Ultimately, the trial court submitted quantum meruit and promissory estoppel claims to the jury; Williams did not object to the omission of a breach of contract question. The jury found in Borrell's favor on both the quantum meruit and promissory estoppel claims, assessing damages of $111,000 and $113,000, respectively.

NeWeigh moved for judgment notwithstanding the verdict, asserting that the existence of an express contract barred any recovery by Borrell for quantum meruit. *Id.* at *1, *4; *see also Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988) (holding that plaintiff may not recover for quantum meruit when express contract exists and covers same materials or services). The trial court granted NeWeigh's motion, and rendered judgment that Borrell take nothing. *Borrell*, No. 14–07–00390–CV, 2009 WL 783342, at *2. Borrell appealed, and our sister court affirmed the judgment. *Id.* at *4.

## C.    The client's suit against his lawyer

In 2011, Borrell sued Williams for legal malpractice, asserting that Williams failed to obtain jury findings and a judgment on Borrell's breach of contract claim against NeWeigh, that Williams's failure to do so constitutes malpractice, and that Borrell would likely have recovered on breach of an oral agreement if only the jury had been allowed to consider it. As malpractice damages, Borrell seeks five percent of NeWeigh's revenue under the Vista contract and a successor contract, or approximately $800,000. Alternatively, had the jury been asked to determine whether Borrell had performed compensable services for NeWeigh that were not covered by a contract, Borrell asserts that he would have recovered the $111,000 that the jury assessed for his quantum meruit claim.

6

Williams moved for summary judgment, contending that the evidence in the underlying suit failed to establish that Borrell had entered into a separate enforceable oral agreement with NeWeigh upon which Borrell was entitled to recover. Thus, Borrell could not demonstrate that he would have prevailed in his suit against NeWeigh even if the jury had determined that a different agreement had existed. Williams further argued that no evidence supported a finding that the October Contract or any oral extension had been breached, that Borrell had suffered any damages due to Williams's alleged negligence, or that any negligence proximately caused Borrell's alleged damages. In support, Williams offered his own affidavit discussing his decision not to pursue a breach of contract claim and an excerpt of the reporter's record from the trial of Borrell's claims against NeWeigh. Williams explained his decision in part by referring to Borrell's own testimony that Borrell and Crumley had never reached an agreement as to the amount and method of payment of any fee for Borrell's efforts related to Vista.

In response, Borrell cited other portions of the record in Borrell's suit against NeWeigh, arguing that Borrell's testimony at trial was consistent. Borrell also offered the affidavit of an expert witness, Dale Felton, who opined that Williams's failure to submit a breach of contract question to the jury constituted negligence, that Borrell would have prevailed on such a question, and that Williams's negligence proximately caused $800,000 in damages to Borrell. Felton

7

further opined that, even had the jury found that no oral contract existed, Williams's negligence in failing to ask the question caused Borrell $111,000 in damages—the amount assessed by the jury on Borrell's quantum meruit claim. Felton attached to his affidavit most of the reporter's record of the trial of Borrell's claims against NeWeigh.

## Discussion

### A.    Standard of review

Williams moved for a traditional and a no-evidence summary judgment. We review a grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "[W]e take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.* (citations omitted). "Under Texas Rule of Civil Procedure 166a(c), the party moving for summary judgment bears the burden to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *Id.* at 215–16 (citations omitted).

A no-evidence motion for summary judgment under Texas Rule of Civil Procedure 166a(i) must be granted when "(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence

conclusively establishes the opposite of the vital fact." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citation omitted). More than a scintilla of evidence exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). Although the non-moving party is not required to marshal its proof, it must present evidence that raises a genuine fact issue on each of the challenged elements. TEX. R. CIV. P. 166a(i).

**B.      Legal malpractice and the underlying contract suit**

To prevail on a legal malpractice claim, a plaintiff must show that "(1) the attorney owed the plaintiff a duty, (2) the attorney breached that duty, (3) the breach proximately caused the plaintiff's injuries, and (4) damages occurred." *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 117 (Tex. 2004); *see also Greathouse v. McConnell*, 982 S.W.2d 165, 172 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). If a legal malpractice case arises from underlying litigation, a plaintiff must prove that, but for the attorney's breach of his duty, the plaintiff would have prevailed in the underlying case. *Greathouse*, 982 S.W.2d at 172. Courts often refer to this causation aspect of the plaintiff's burden as the "suit-within-a-suit" requirement. *See id.* at 173. In general, one proves causation in a legal malpractice suit by expert testimony. *See Alexander*, 146 S.W.3d at 119–20.

## C. Case-within-a-case causation

Accordingly, to prevail on this malpractice claim, Borrell must show that Williams's actions or inactions in the underlying suit proximately caused damage to Borrell. *Id.* at 117; *Greathouse*, 982 S.W.2d at 172. In other words, Borrell's claim against Williams requires him to adduce evidence that he probably would have prevailed against NeWeigh if Williams had pursued a breach of contract claim on Borrell's behalf to verdict. *Greathouse*, 982 S.W.2d at 173. Williams contends that no evidence supports such a showing. We thus examine whether the summary-judgment record contains some evidence that Williams's alleged negligence caused Borrell to lose his case against NeWeigh.

To prevail in a suit for breach of an agreement, the agreement must be sufficiently definite in its terms to allow a court to determine the rights and obligations of the parties. *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992). The contract also must include all material terms of the parties' agreement. *Id.* If an agreement lacks definiteness with respect to a critical element, such as the services to be performed or the compensation to be paid, it is unenforceable. *Gannon v. Baker*, 830 S.W.2d 706, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Terrell v. Nelson Puett Mortg. Co.*, 511 S.W.2d 366, 369 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.). Whether an agreement contains all of the essential terms of the parties' agreement is a question

10

of law. *See America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 625 (Tex. App.—San Antonio 1996, writ denied).

An agreement to enter into a future contract is unenforceable unless it specifies all of the material terms of the future agreement, leaving none for future negotiation. *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 134 (Tex. App.—Waco 2005, pet. denied) (citing *Parker Chiropractic Research Found. v. Fairmont Dallas Hotel Co.*, 500 S.W.2d 196, 201 (Tex. Civ. App.—Dallas 1973, no writ)). If an essential term is left open to future negotiation, then parties have nothing more than an unenforceable "agreement to agree." *See Oakrock Exploration Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied).

*Extension of the October Contract*

As our sister court previously has held, the evidence in Borrell's litigation against NeWeigh conclusively proved that Borrell and Crumley orally agreed to an extension of the October Contract. *Borrell*, No. 14–07–00390–CV, 2009 WL 783342, at *4. This contract required Borrell and Gregory to "provide NeWeigh with an acceptable hospital" in which to perform bariatric surgeries and to "provide a contract to NeWeigh with the hospital" meeting certain requirements, such as a minimum monthly average number of patients, minimum fee per client referred, advertising and licensing fees, and payment of office expenses. Thus, the October Contract called for Borrell, along with Gregory, to perform the same

11

services that Borrell testified were the subject of one or more oral agreements with Crumley, NeWeigh, Vista, or Dynacq.

But the October Contract contemplated only two methods of compensation to Borrell. First, if Borrell and Gregory "provide[d] a contract to NeWeigh with [a] hospital," then the contract would have required the hospital to pay Borrell and Gregory $200 per NeWeigh client. Second, if an acceptable hospital acquired NeWeigh, then Borrell and Gregory would be entitled to a sales commission of six percent of the purchase price. As Borrell concedes in his brief, neither scenario obligated NeWeigh to pay Borrell directly for patients that it later referred to Vista. Borrell instead contends that Williams should have pursued claims for separate oral agreements or oral modifications of the October contract. If the jury found separate oral agreements existed, Borrell contends, then he would have recovered under them; if not, then he should have recovered under a quantum meruit theory. We examine the summary-judgment record with respect to this contention.

*Borrell's other alleged oral agreements*

Borrell does not specify which of the other oral agreements Williams should have tried to verdict in the case against NeWeigh. None, however, could have sustained an independent breach of contract claim. At most, the evidence showed that the parties had an unenforceable "agreement to agree," that left the

12

consideration element wholly undefined throughout the parties' discussions. *See Killam*, 87 S.W.3d at 690.

Borrell testified in summary fashion that he had one or more oral agreements with Crumley that NeWeigh would pay him a percentage of its revenues from its relationship with Vista, but material elements of these alleged agreements were indeterminate. For example, Borrell testified that he and Crumley "discussed the fact that as soon as she knew what she was going to get paid, we would write up an agreement of what I would get paid," and "we continued to discuss that as soon as the final contract [with Vista] came, our attorneys would meet and we would finalize a contract" as to Borrell's fees. He also testified regarding a meeting between Crumley, Borrell, and others in April 2001, the "objective" of which was "to come to an agreement that [sic] what my fee would be, and [Crumley] would discuss this with Dynacq and Vista Hospital, that when they drew up their contract, my fee would be included."

According to Borrell, Crumley explained "the problem with reaching an agreement at the April [2001] meeting," stating that she was uncomfortable formalizing an agreement regarding Borrell's fees which she believed might be a violation of a federal law known as the "Stark Amendment," which prohibits physicians from referring patients for designated health services in exchange for certain forms of compensation. *See* 42 U.S.C.A. § 1395nn (West 2012). Borrell

13

testified that, "in terms of trying to go forward and getting [his] contract in writing," the outcome of this meeting was that Crumley would make a proposal to Dynacq that the contract between NeWeigh and Vista, which had not yet been signed, include a fee for Borrell.

Borrell's testimony regarding the amount and nature of his compensation under any oral modification or separate agreement was indeterminate: he variously recounted that the parties agreed that it was to be five percent of NeWeigh's revenues, paid by Crumley directly; or five percent of Dynacq's revenues, paid through NeWeigh as intermediary; or a minimum of $300 per patient; or as a percentage equaling five to six percent of revenues per patient. With significantly different compensation numbers, and a variety of the primary party liable to pay them, the evidence demonstrates, at most, an agreement to decide on a particular mode and amount of compensation—at a later date.

In his affidavit supporting his motion for summary judgment on Borrell's malpractice claim, Williams opined that this indefiniteness in Borrell's testimony was one reason he did not pursue a breach of contract claim to a verdict. In his affidavit, Borrell's expert, Felton, acknowledged the problem, writing "Borrell believes he is entitled to five or six percent of [Vista's] total revenues," but he did not reconcile these numbers or the other contradictions in Borrell's testimony.

14

The summary-judgment evidence demonstrates that, in the underlying case, Borrell never reached an agreement that fixed an amount, percentage, method, or mode of compensation. The record reveals at most an unenforceable agreement to determine Borrell's compensation in the future. *See Killam*, 87 S.W.3d at 690. Any failure to submit a breach of contract claim did not cause damages, because the testimony did not reveal an enforceable agreement other than the October Contract.

*Alternative recovery under quantum meruit*

In the alternative, Borrell argues that the jury could have found that he did not have an enforceable contract with NeWeigh; such a finding, he contends, could have supported a recovery on the jury's quantum meruit findings. This argument, however, misconstrues our sister court's holding in Borrell's case against NeWeigh. In the appeal of the underlying case, the court of appeals held that the evidence conclusively demonstrated that Borrell's relationship with NeWeigh was governed by an express contract, namely the October Contract as extended by the parties' verbal agreement. *Borrell*, No. 14–07–00390–CV, 2009 WL 783342, at *4. Both Borrell and Crumley testified, without contradiction, that they considered the October Contract as still in effect at the time of trial. *Id.* at *3. Our sister court concluded that this evidence proved as a matter of law that the parties had a contract covering the services that Borrell allegedly rendered to NeWeigh with

15

regard to Vista.  *Id.* at \*4; *see also City of Keller*, 168 S.W.3d 802, 815–16 (Tex. 2005).  The jury could not have found that no contract covered such services.  *City of Keller*, 168 S.W.3d at 815–16.[1]  A negative finding as to the existence of an independent contract would not have ameliorated the appellate court's holding that the contract that did exist governed the rights and obligations of the parties.

Because Borrell has not adduced evidence to support a finding that he would have prevailed in the underlying case save for his lawyer's malpractice, we hold that he has failed to raise a fact issue regarding the "case within a case" causation element of his claim against Williams.  *See Merrell Dow Pharm.*, 953 S.W.2d at 711; Tex. R. Civ. P. 166(i).  Accordingly, the trial court properly granted a no-evidence summary judgment.  *See Merrell Dow Pharm.*, 953 S.W.2d at 711; Tex. R. Civ. P. 166(i).

## D.    Sanctions

Williams argues that Borrell's appeal is frivolous and moves for an award of damages under Rule of Appellate Procedure 45.  Under Rule 45, if we determine that an appeal is "frivolous," we may "award each prevailing party just damages." Tex. R. App. P. 45.

---

[1]    This does not, however, mean that the jury could have found in Borrell's favor as to a breach of contract claim.  As discussed above, the October Contract did not obligate NeWeigh to pay Borrell anything in the absence of an acquisition of NeWeigh, which never happened.

In the trial of Borrell's claims against NeWeigh, "Borrell consistently testified that he had some sort of oral agreement governing his compensation for services rendered to NeWeigh to help it obtain a contract with Vista." *Borrell*, No. 14–07–00390–CV, 2009 WL 783342, at *4. In the present dispute, Borrell offered evidence of such an agreement in the form of Felton's affidavit and its attachments from the record of the NeWeigh litigation. Although we hold that this evidence failed to raise a fact issue sufficient to survive Williams's motion for summary judgment, it nonetheless demonstrated that Borrell and Crumley had extensive discussions regarding various possible agreements under which Borrell might be compensated. In light of these facts, we decline to find that Borrell's appeal was frivolous. Accordingly, we deny Williams's motion for sanctions.

## Conclusion

We hold the trial court properly granted summary judgment because Borrell failed to raise a fact issue regarding causation. We therefore affirm the judgment of the trial court. We deny the request for sanctions for filing a frivolous appeal.

Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.