

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-15-00118-CV

Shirley **ADAMS**, Charlene Burgess, Willie Mae Herbst Jasik, William Albert Herbst,
Helen Herbst, and R. May Oil & Gas Company, Ltd.,
Appellants

v.

**MURPHY EXPLORATION & PRODUCTION CO.-USA**, a Delaware Corporation,
Appellee

From the 218th Judicial District Court, Atascosa County, Texas
Trial Court No. 13-05-0466-CVA
Honorable Stella Saxon, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Patricia O. Alvarez, Justice

Delivered and Filed:  June 15, 2016

REVERSED AND REMANDED

Lessors appeal a traditional summary judgment rendered (1) against them on their breach of contract claim against Murphy, the lessee, and (2) for Murphy on its declaratory judgment action.  The parties dispute whether a well drilled on the lessors' tracts satisfies the requirements of the oil and gas leases' offset well clauses.  We conclude Murphy failed to conclusively prove its points, and it was not entitled to summary judgment.  We reverse the trial court's judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

### BACKGROUND

**A.      Parties**

Appellants Shirley Adams, Charlene Burgess, Willie Mae Herbst Jasik, William Albert Herbst, Helen Herbst, and R. May Oil & Gas Co., Ltd. (collectively Lessors) own royalty interests in two adjacent tracts of land, the Shirley tract and the William tract, in Atascosa County.  In August 2009, Shirley and William, the owners of the executive rights, executed oil and gas leases for their respective tracts; the leases were assigned to appellee Murphy Exploration & Production Co.  Subsequently, Lessors sued Murphy for allegedly breaching the terms of the oil and gas leases.

**B.      Lease Paragraph 25—Offset Well Clause**

The parties do not dispute the creation, existence, execution, or applicability of the leases. They agree that the relevant portions of the leases are the identical offset well clauses, Paragraph 25, in each lease.[1]  Paragraph 25 reads in its entirety as follows:

> 25.) It is hereby specifically agreed and stipulated that in the event a well is completed as a producer of oil and/or gas on land adjacent and contiguous to the leased premises, and within 467 feet of the premises covered by this lease, that Lessee herein is hereby obligated to, within 120 days after the completion date of the well or wells on the adjacent acreage, as follows:

> (1) to commence drilling operations on the leased acreage and thereafter continue the drilling of such off-set well or wells with due diligence to a depth adequate to test the same formation from which the well or wells are producing from on the adjacent acreage; or

> (2) pay the Lessor royalties as provided for in this lease as if an equivalent amount of production of oil and/or gas were being obtained from the off-set location on these leased premises as that which is being produced from the adjacent well or wells; or

> (3) release an amount of acreage sufficient to constitute a spacing unit equivalent in size to the spacing unit that would be allocated under this lease to such well or wells on the adjacent lands, as to the zones or strata producing in such adjacent well.

---

[1] For simplicity, from this point on, we refer to the two leases jointly as the lease.

## C. Description of Wells

There are two wells of interest, the Lucas well and the Herbst well. The parties agree the offset well clause was triggered by the Lucas "A" #1H well. The Lucas well is a third party's horizontal well that was drilled on a tract adjacent to the Shirley and William tracts;[2] the Lucas well runs parallel to the Shirley and William tracts' borders. To satisfy the offset well requirement, Murphy drilled (on the Shirley and William tracts) the Herbst Unit "B" #1H well; it runs parallel to the Lucas well and bottoms in the same formation—but the two wells are separated laterally by approximately 2,100 feet.

## D. Competing Motions for Summary Judgment

Both sides moved for traditional summary judgment. *See* TEX. R. CIV. P. 166a(c). Each argued the trial court could determine as a matter of law whether the Herbst well was an offset well under the lease. Murphy argued it was; Lessors argued it was not. The trial court denied Lessors' motion and granted Murphy's motion.[3] We turn to the applicable standard of review for competing traditional motions.

### STANDARD OF REVIEW

To prevail on a traditional motion for summary judgment, a plaintiff movant must show "there is no genuine issue as to any material fact and the [movant] is entitled to judgment as a matter of law." *Id.*; *accord Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *accord Nixon*, 690 S.W.2d at 549. A

---

[2] The two tracts are oriented somewhat like two connected rail cars that run along a single track aligned roughly northwest to southeast. In our example, the Shirley tract is the northwest car; the William tract is the southeast car.

[3] Lessors appeal the trial court's grant of Murphy's motion; they do not appeal the trial court's denial of their motion. *See Ware v. Everest Group, L.L.C.*, 238 S.W.3d 855, 867 (Tex. App.—Dallas 2007, pet. denied); *Pine v. Salzer*, 824 S.W.2d 779, 780 (Tex. App.—Houston [1st Dist.] 1992, no writ). Further, Lessors pray for a remand; they do not pray for this court to render judgment on their motion. Thus, we do not review the trial court's denial of Lessors' motion for summary judgment. *See Ware*, 238 S.W.3d at 867; *Pine*, 824 S.W.2d at 780.

defendant moving for traditional summary judgment must conclusively disprove at least one essential element of each of the plaintiff's claims. *Elliott-Williams Co. v. Diaz*, 9 S.W.3d 801, 803 (Tex. 1999); *Doe v. Boys Clubs of Greater Dall., Inc.*, 907 S.W.2d 472, 476–77 (Tex. 1995). "When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence[,] . . . determine all questions presented[,] . . . [and] render the judgment that the trial court should have rendered." *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000) (citations omitted); *accord Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

## OIL AND GAS LEASE CONSTRUCTION

To determine whether the Herbst well met the offset well clause requirements, we must first construe the lease.

Whether an oil and gas lease is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *accord Dynegy Midstream Services, Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 168 (Tex. 2009). If the lease is unambiguous, to determine what the lease requires, "we examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined." *Heritage Res.*, 939 S.W.2d at 121; *accord Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005).

As we read the lease provisions, "[w]e give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Heritage Res.*, 939 S.W.2d at 121; *accord Valence Operating Co.*, 164 S.W.3d at 662. If a provision contains a term that has a commonly understood meaning in the particular industry, we use the commonly understood meaning. *See Zurich Am. Ins. Co. v. Hunt Petroleum (AEC),*

*Inc.*, 157 S.W.3d 462, 465 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (recognizing that a technical term's commonly understood meaning may supplant a plain or ordinary meaning); *Mescalero Energy, Inc. v. Underwriters Indem. Gen. Agency, Inc.*, 56 S.W.3d 313, 320 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (same); *see also Heritage Res.*, 939 S.W.2d at 121 (same).

## ANALYSIS

### A.     Parties' Motions for Summary Judgment

Lessors sued Murphy for breach of the lease agreement.  Because Lessors' motion for summary judgment provides helpful context, we recite its most relevant points.

In their traditional motion for summary judgment, Lessors argued Murphy breached the lease because the offset well clause expressly required Murphy to drill an offset well—a well that actually prevents drainage.  Lessors asserted that "[u]nder the plain, ordinary meaning of the [offset clause]," any offset well must be drilled "as close as reasonably possible to the [Lucas well] so that it can truly 'offset' or 'counterbalance' the [Lucas] well."  They also asserted that under the commonly understood meaning of offset well, the Herbst well did not meet the offset clause requirements.  Lessors contended they were entitled to summary judgment because the Herbst well was not an offset well as a matter of law.

Murphy responded with its own traditional motion for summary judgment.  In it, Murphy sought to conclusively disprove an essential element of the Lessors' breach of contract claims. Specifically, Murphy argued that the offset well clause does not require an offset well to be drilled at a particular location or within any specific distance from a triggering well.  Murphy insisted the "Herbst Well complies with each and every requirement of Paragraph 25 of the Leases."  In effect, Murphy argued the evidence conclusively proved it did not breach the lease because (1) the Herbst

well met all the other Paragraph 25 requirements and (2) the Herbst well was an offset well as a matter of law.

## B.    Undisputed Facts

The parties' motions and briefs recite virtually identical relevant facts.    The parties recognize they are bound by the lease, and the only portion of the lease in question for this appeal is Paragraph 25, the offset well clause.    The parties acknowledge the Lucas well triggered the lease's offset well clause, and under it, Murphy had three options: drill an offset well, pay Lessors the required royalties, or release acreage from Murphy's lease.    *See Hooks v. Samson Lone Star, Ltd. P'ship*, 457 S.W.3d 52, 66 (Tex. 2015) (reciting three similar options in an offset well clause).

Murphy chose to drill an offset well.    It began drilling the Herbst well within 120 days after the completion of the Lucas well, and the Herbst well was drilled "with due diligence to a depth adequate to test the same formation from which the [Lucas] well . . . [is] producing."

The disputed matter is whether the Herbst well was, under the lease, an offset well.

## C.    Meaning of Term Offset Well

The triggered offset clause required Murphy to drill an "off-set well or wells."    Lessors acknowledge that if the term "off-set" was removed from the clause, the Herbst well would meet the other requirements of the clause.    But Lessors argue, and we agree, that we must give meaning and effect to all the lease's words, including the offset clause's express requirement that a well drilled to satisfy its provisions must be an offset well.    *See Valence Operating Co.*, 164 S.W.3d at 662; *Heritage Res.*, 939 S.W.2d at 121.    If the term offset well has a commonly understood meaning in the oil and gas industry, we will apply its commonly understood meaning.    *See Zurich Am. Ins. Co.*, 157 S.W.3d at 465; *Mescalero Energy*, 56 S.W.3d at 320.

An often-cited treatise defines an offset well as "[a] well drilled on one tract of land to prevent the drainage of oil or gas to an adjoining tract of land, on which a well is being drilled or

is already in production." *See* 8 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW, MANUAL OF OIL & GAS TERMS 684 (LexisNexis Matthew Bender 2014). The treatise is informative but not dispositive, and we look for guidance from Texas courts.

Over many decades, the Texas Supreme Court has recognized the concept that an offset well is one used "to offset drainage from [the owner's] property," *Coastal Oil & Gas Corp. v. Garza Energy Trust*, 268 S.W.3d 1, 14 (Tex. 2008) (discussing various remedies to protect against drainage including drilling an offset well "to offset drainage from [the owner's] property"), and as a well drilled to satisfy the lessee's duty to protect the leasehold from drainage, *Shell Oil Co. v. Stansbury*, 410 S.W.2d 187, 188 (Tex. 1966) (per curiam) (recognizing that an offset well clause "obligated Shell to drill an offset well if a draining well was within a specified distance from the [lessor's] property line"). *See also Lenape Res. Corp. v. Tenn. Gas Pipeline Co.*, 925 S.W.2d 565, 583 (Tex. 1996) (recognizing that an operator's duty "to protect the leasehold from drainage, . . . could give rise to a duty to drill an offset well under certain circumstances"); *Tex. Pac. Coal & Oil Co. v. Barker*, 6 S.W.2d 1031, 1033, 1035 (Tex. 1928) (addressing a contract that required offset wells to prevent drainage from adjacent wells).

Our sister courts have also recognized that an offset well's purpose is to protect the leasehold against drainage from adjacent wells within a certain proximity. *E.g.*, *Amoco Prod. Co. v. Alexander*, 594 S.W.2d 467, 473 (Tex. Civ. App.—Houston [1st Dist.] 1979), *modified*, 622 S.W.2d 563 (Tex. 1981); *Sun Oil Co. (Del.) v. Hall*, 566 S.W.2d 696, 697 (Tex. Civ. App.—Austin 1978, no writ); *Middle States Petrol. Corp. v. Messenger*, 368 S.W.2d 645, 654 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e.) ("The duty of the lessee to prevent drainage ordinarily requires him, in the absence of contrary agreement, to drill necessary offset wells . . . .").

Finally, this court has recognized the concept that an offset well is used to protect against drainage. *E.g.*, *Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 45 n.3 (Tex. App.—San Antonio

2006, no pet.) (op. on reh'g); *Oakrock Expl. Co. v. Killam*, 87 S.W.3d 685, 690 (Tex. App.—San Antonio 2002, pet. denied).

Having reviewed the applicable law, we conclude the commonly understood meaning of offset well is a well used to protect against drainage. *See Coastal Oil & Gas Corp.*, 268 S.W.3d at 14; *Stansbury*, 410 S.W.2d at 188; *Middle States Petrol. Corp.*, 368 S.W.2d at 654; *see also* 8 PATRICK H. MARTIN & BRUCE M. KRAMER, WILLIAMS & MEYERS, OIL AND GAS LAW, MANUAL OF OIL & GAS TERMS 684 (LexisNexis Matthew Bender 2014).

## D.    Murphy's Summary Judgment Burden

### 1.    *Lessors' Breach of Contract Claim*

Based on the sole ground asserted in its motion, to be entitled to summary judgment against Lessors' breach of contract claim, Murphy had to conclusively disprove the element of breach. *See Elliott-Williams Co.*, 9 S.W.3d at 803; *Doe*, 907 S.W.2d at 476–77. Because Lessors did not dispute that Murphy met the other requirements of the offset well clause, Murphy could conclusively disprove breach if it proved the Herbst well was an offset well as a matter of law. Given (1) the commonly understood meaning that an offset well is a well that protects against drainage, (2) the Lucas well triggered the offset well clause, and (3) Murphy drilled the Herbst well to satisfy the lease's offset well clause provisions, Murphy's summary judgment burden was to conclusively prove the Herbst well was protecting the Shirley and William tracts from drainage by the Lucas well.

### 2.    *Murphy's Declaratory Judgment Action*

In its declaratory judgment action, Murphy asked the trial court to declare that (1) Murphy drilled the Herbst well within the time required, to the required depth, and with the requisite due diligence; (2) under the lease, the Herbst well was an offset well; and (3) Murphy did not breach the lease's offset well clause requirements and Murphy does not owe Lessors any damages.

Similar to its burden to disprove breach, Murphy's declaratory action summary judgment burden was to prove as a matter of law that the Herbst well was an offset well—a well that was protecting the Shirley and William tracts from drainage by the Lucas well. *See* TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548.

We turn to the summary judgment evidence.

**E.      Summary Judgment Evidence**

In their proffered summary judgment evidence, each side submitted affidavits from expert witnesses who addressed the question of whether, under the lease, the Herbst well was an offset well.

*1.       McBeath Affidavit*

Murphy's expert, John C. McBeath P.E., opined that the lease was written with the Eagle Ford Shale and hydraulic fracturing operations in mind.  He averred that both the Lucas and Herbst wells were completed in the Eagle Ford Shale formation, and "the conventional concept of drainage across lease lines has limited application in the [Eagle Ford Shale]."  He noted the Eagle Ford Shale "formation will not produce without large multi-stage hydraulic fracture jobs . . . and early indications confirm that spacing horizontal laterals as close as 225 feet results in well recoveries comparable to much wider spaced laterals."  McBeath opined that "[t]he term 'offset well' is a specialized term within the oil and gas industry and is commonly understood within the industry as describing any well drilled on an adjacent lease or property."  He also opined that the term offset well includes direct, or immediate, offset wells; the lease required only an offset well; and an offset well had no inherent maximum separation distance from a triggering well.  He concluded that the Herbst well "is an offset well as that term is commonly understood and used in the industry and [P]aragraph 25 of the leases."

### 2. *Robertson Affidavit*

Lessors' expert, Gregg Robertson, averred that an offset well is one that is "drilled as close as possible to the offending well in order to prevent or minimize drainage from the leased premises by the offending well." He insisted that the only purpose for including an offset well clause in a lease is to protect the leasehold from drainage. He opined that the Herbst well does not meet the lease's offset well requirements, and the Herbst well was not an offset well to the Lucas well.

### F. Murphy's Evidence Not Conclusive Proof

In his affidavit, McBeath avers that the Lucas and Herbst wells were completed in the Eagle Ford Shale formation. We did not find any summary judgment evidence that refutes these statements.

McBeath also makes statements about the characteristics of the Eagle Ford Shale formation in general. He averred that "the conventional concept of drainage across lease lines has *limited* application in the [Eagle Ford Shale]," (emphasis added), and "spacing horizontal laterals as close as 225 feet results in well recoveries comparable to much wider spaced laterals."

To be entitled to summary judgment, Murphy's burden was to conclusively prove the Herbst well was an *offset* well—a well that was protecting the Shirley and William tracts against drainage by the Lucas well. *See Coastal Oil & Gas*, 268 S.W.3d at 14 (offset well); *Nixon*, 690 S.W.2d at 548 (summary judgment). Murphy offered McBeath's general statements about the Eagle Ford Shale and his opinion that the Herbst well "is an offset well."

But McBeath's general statements about the Eagle Ford Shale and typical drainage patterns do not conclusively answer the specific question: whether the Herbst well is an offset well—one that is protecting the Shirley and William tracts against drainage by the Lucas well. Without specific evidence to conclusively prove that the Herbst well is protecting the Shirley and William tracts against drainage by the Lucas well, McBeath's opinion that the Herbst well is an offset well

is merely speculative or conclusory. *See Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999) ("[I]t is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.").

Making all reasonable inferences and resolving doubts in Lessors' favor and against Murphy, *see Rhone-Poulenc*, 997 S.W.2d at 223; *Nixon*, 690 S.W.2d at 549, we conclude Murphy failed to conclusively prove the Herbst well was protecting the Shirley and William tracts against drainage by the Lucas well, and thus failed to prove as a matter of law that the Herbst well is an offset well. Therefore, Murphy was not entitled to summary judgment against Lessors' breach of contract claim or on Murphy's own declaratory judgment action.

We sustain Lessors' first issue.

### ATTORNEY'S FEES

In their second issue, Lessors complain the trial court erred when it conditionally awarded appellate attorney's fees to Murphy because there is no statutory basis to award appellate attorney's fees. Assuming arguendo there was a proper statutory basis to conditionally award appellate attorney's fees, because Murphy was not entitled to summary judgment (1) against Lessors' breach of contract claim or (2) for its own declaratory judgment action, we need not address the merits of Lessors' second issue.[4] *See* TEX. R. APP. P. 47.1; *Sloan v. Law Office of Oscar C. Gonzalez, Inc.*, 479 S.W.3d 833, 834 (Tex. 2016).

---

[4] We do not reach the question of whether Murphy's declaratory judgment action merely duplicated the issues already before the court in Lessors' breach of contract claims. *See MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669–71 (Tex. 2009).

## CONCLUSION

Because it failed to prove as a matter of law that the Herbst well met the requirements of the offset well clause, Murphy was not entitled to traditional summary judgment against Lessors' breach of contract claim or for its own declaratory judgment action. We reverse the trial court's judgment, including any award of attorney's fees, and remand this cause to the trial court for further proceedings consistent with this opinion.

Patricia O. Alvarez, Justice